## Simkins *v.* Barcus, Appellant.

Argued October 3, 1950. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

*Peter P. Zion,* with him *Albert H. Friedman,* for defendant, Barcus, appellant.

*Edward I. Weisberg,* with him *David N. Feldman,* for plaintiff, appellee.

*Harry Lapensohn,* with him *James Francis Ryan,* Assistant City Solicitors, and *Frank F. Truscott,* City Solicitor, for defendant, City of Philadelphia, appellee.

OPINION BY RHODES, P. J., January 12, 1951:

This action in trespass arises out of a collision between a taxicab of the defendant, Harrison Barcus, trading as United Cab Company, and a police ambulance owned and operated by the other defendant, the City of Philadelphia, which occurred shortly after 5 a.m. on January 4, 1948, near the center of the intersection of Broad and Arch Streets, Philadelphia. Plaintiff was a passenger in the taxicab and was asleep at the time. He was thrown out of the taxicab onto the street as a result of the collision, and thereby sustained personal injuries. His action against both defendants for the recovery of damages resulted in a verdict in his favor in the amount of $879 against the defendant Barcus only. The motion for a new trial filed by Barcus was dismissed, and judgments were entered on the verdict in favor of plaintiff against Barcus and against plaintiff in favor of the City of Philadelphia. The defendant Barcus has appealed from the respective judgments.

When the accident occurred plaintiff was sitting on the left-hand side of the rear seat of the taxicab which was proceeding east on Arch Street. As the taxicab approached Broad Street, the traffic light at the intersection was green in favor of Arch Street traffic, and it entered the intersection at 20 to 25 miles per hour without reducing its speed. Two cars which had been proceeding south, and which were abreast of each other, had stopped on the west side of Broad Street near the north side of Arch Street, waiting for the traffic light to change. The police ambulance was traveling south on Broad Street, occupied only by its driver, a police officer, in response to a summons to a three-

alarm fire at 20th and Market Streets. The nature and the function of this ambulance were described by its driver: "Q. What kind of car was this you operated? A. It is known as a hospital unit that goes to all two-alarm fires, or any place where there is a large gathering of people that might need medical attention. . . . Q. Now, how is it equipped? A. It is equipped with a complete hospital operating room on the inside, and when it arrives at its destination it is manned by two or three doctors from the chief surgeon's office who can perform operations or do anything that a hospital can do. Q. How high is it? A. It is about 9 foot 6, about 7 foot wide, and about 28 foot long. Q. Lights on it? A. It has yellow marker lights at the front and back, it has a hospital sign in red and white, it has a battalion chief's revolving red light on the front and an electric siren on the top."

The ambulance went around the two cars which had stopped ahead of it, and admittedly continued through the red light. The revolving red light on the front of the ambulance was in operation and the ambulance driver testified that the siren was blowing. He also testified that as he approached the intersection he looked to his right and saw appellant's taxicab coming east on Arch Street, 75 to 100 feet west of the westerly side of Broad Street; that he looked to the left and saw a car coming from the east on Arch Street, which stopped as it approached the intersection; that upon looking again to his right he observed the taxicab a few feet from the right side of the ambulance whereupon the collision occurred. He also testified that the speed of the ambulance at the time of the collision was 20 to 25 miles per hour.

Appellant's statement of questions involved relates only to the charge of the court, but counsel's argument covers a much wider scope. Appellant's principal complaint seems to be that the trial judge in his entire

charge assumed that the ambulance was engaged in an "emergency," whereas, in fact, there was insufficient evidence present to warrant a finding that the ambulance was so engaged.

The Vehicle Code, Act of May 1, 1929, P. L. 905, §1026, as amended by the Act of June 5, 1937, P. L. 1718, §5, 75 PS §635, provides:

"(a) It shall be unlawful for the driver or operator of any vehicle . . . to disobey the directions of any traffic signal placed in accordance with the provisions of this act, unless otherwise directed by a peace officer.

"(b) Whenever traffic at an intersection is alternately directed to stop and go, by the use of traffic signals, the colored lights shall indicate as follows, . . .

"3. Red.—Traffic facing the signal shall stop before entering the intersection, and remain standing until green is shown. . . .

"(d) The traffic signal interpretations set forth in this section shall not apply to vehicles, when operated with due regard for safety, under the direction of the police, in the chase or apprehension of violators of the law or of persons charged with or suspected of any such violation, nor to fire department or fire patrol vehicles when traveling in response to a fire alarm, nor to ambulances when traveling in emergencies. This exemption shall not, however, protect the operator of any such vehicle from the consequences of a reckless disregard of the safety of others."

The testimony of the ambulance driver, if believed, was sufficient for the jury to find the existence of an emergency within the purview of subsection (d) of the Act. The evidence discloses that the ambulance is a hospital unit, originally known as a "catastrophe unit," equipped with a complete hospital operating room. It goes to all two-alarm fires, and is manned by

two or three doctors from the chief surgeon's office who meet it at the scene. On the morning of the accident it had been summoned to the three-alarm fire.

It is argued on behalf of appellant that the driver of the ambulance did not know whether there was anyone actually injured at the scene of the fire or whether his services were required there. This, as we view it, is immaterial. It could be said that the mere possibility of need for the ambulance at the scene of the three-alarm fire created an emergency under which the ambulance driver was traveling at the time of the collision. The driver's duty, upon being summoned, was to proceed to the scene of the fire as quickly as possible, and not drive in "reckless disregard of the safety of others." The usual exigencies attendant upon a three-alarm fire in the central part of the city would not normally permit giving specific information to an ambulance driver when summoned for such purpose. If, in the present case, or a similar case, the actual need for the ambulance did not arise until after its arrival at the scene of the fire, or if it developed that it was not needed at all, the potential of the situation would constitute an emergency while the vehicle was en route.

The court below, in its opinion in this case, observes that, since the police ambulance belonged to and was operated by the Department of Public Safety of the City of Philadelphia, it could be considered in the class of "fire department or fire patrol vehicles . . . traveling in response to a fire alarm" as well as of "ambulances . . . traveling in emergencies," as set forth in the above section of the Code. This also may be an answer to appellant's contention that the evidence was insufficient to bring the police ambulance within the exemption in the Act. Cf. *Long v. Schumacher*, 342 Pa. 356, 20 A. 2d 765, where our Supreme Court held that a police motorcycle traveling to a

multi-alarm fire in a closely built-up section of Pittsburgh came within the exemption in the Act. In that case, page 361 of 342 Pa., page 767 of 20 A. 2d, the Supreme Court, quoting from *Fire Insurance Patrol v. Boyd,* 120 Pa. 624, 642, 15 A. 553, 554, said: " 'It is as much the province or duty of the city to save life and property at fires as to extinguish such fires . . . .' " In saving lives a mobile hospital unit of the type of the police ambulance in this case is frequently as important as fire department or fire patrol vehicles which are clearly within the exemption relating to ordinary traffic rules.

The cases relied upon by appellant are readily distinguished on their facts from the present case. In *Oakley v. Allegheny County,* 128 Pa. Superior Ct. 8, 193 A. 316, the ambulance involved in a collision was engaged in transporting a patient on a stretcher from his home to a hospital. There was no evidence that an emergency situation existed, no evidence of the physical condition of the patient, no proof in fact that there was any need for haste that would warrant disregard of the usual traffic rules. It is true that the mere fact that a vehicle is an ambulance does not exempt it from the observance of traffic rules. In the present case, however, the police ambulance was on its way to a three-alarm fire. The situations are not analogous. *Mashinsky v. Philadelphia,* 333 Pa. 97, 3 A. 2d 790, and *LaMarra v. Adam,* 164 Pa. Superior Ct. 268, 63 A. 2d 497, are not inconsistent with the jury's verdict in this case.

It might be noted that defendant City presented a point for charge to the effect that the ambulance was engaged, at the time of the accident, in the performance of an official emergency duty. Referring to this, and another point, the trial judge stated: ". . . I approve, but I think I have covered them and I won't read them

again." Appellant has also assigned this as error. The point was not read to the jury, and therefore if it was error it was harmless error. Thereafter the trial judge specifically instructed the jury, with appropriate comment, that whether or not an emergency existed was a question for it to decide on the evidence before it.

In the charge the trial judge adequately explained to the jury the duty of an ambulance driver when traveling in an emergency. He charged that the driver must proceed with due regard to safety under all the circumstances, and that such driver may not proceed with reckless disregard for the public safety. See *Reilly v. Philadelphia,* 328 Pa. 563, 567, 568, 195 A. 897. Whether there was a compliance with such duty was for the jury to determine. The record would not warrant or justify our holding as a matter of law that the ambulance driver operated his vehicle in "reckless disregard of the safety of others." In fact, the ambulance driver could have anticipated, under the circumstances, that appellant's taxicab, approaching from the west on Arch Street, would do the same as the car approaching from the east on that street—that is, stop before entering the intersection and remain in that position until the ambulance had passed.

On the other hand, the jury's finding of negligence on the part of appellant's taxicab driver is amply sustained by the evidence. We can readily understand that a jury might reject the cab driver's testimony that he looked north at the west houseline of Broad Street and did not see the ambulance approaching notwithstanding that he could see north on Broad Street as far as Cherry Street, a distance of approximately 288 feet; and that he continued looking north until he reached a point opposite the second car which had stopped on Broad Street and still saw nothing although the collision occurred almost immediately thereafter at

the center of the intersection. It was clearly established that the flashing red light on the ambulance was in operation, and there was testimony that the siren had been sounding continuously. Such conflicts as there were in the testimony were for the jury to resolve. Section 1015 (a) of the Act of May 1, 1929, P. L. 905, as amended by the Act of May 21, 1943, P. L. 310, §4, 75 PS §574, provides that "Upon the approach of any police, fire department vehicle, [or] ambulance, . . . giving audible signal, the driver of every other vehicle shall immediately drive the same to a position as near as possible, and parallel to, the right-hand edge or curb of the highway, clear of any intersection of highways, and shall stop and remain in such position, unless otherwise directed by a peace officer, until such vehicle shall have passed." The evidence would warrant the jury in finding that appellant's cab driver violated this provision of the Act, and that the collision followed. Also significant is the testimony of a disinterested witness that the taxicab did not slow down when it approached the intersection. See *Weinberg v. Pavitt*, 304 Pa. 312, 322, 155 A. 867. This occurred under conditions which the taxicab driver must have observed if he looked as he testified he did.

Appellant further contends that the trial judge erred in refusing to grant a number of his requests for charge upon various specific points having to do principally with the duty of the ambulance driver. The charge covered the applicable principles of law and was fair to all parties concerned. *Bollinger v. West Penn Power Co.*, 365 Pa. 599, 76 A. 2d 214. Under such circumstances it is not error to refuse to charge in the exact language requested by counsel. *Struppler v. Rexford*, 326 Pa. 545, 192 A. 886; *Carey v. Buckley*, 192 Pa. 276, 43 A. 1019; *Simplex Steel Products Co. v. Goleman*, 134 Pa. Superior Ct. 305, 4 A. 2d 230.

We are of the opinion that the charge when read as a whole adequately and properly presented the issues to the jury; that the verdict finds sufficient support in the evidence; and that appellant's motion for new trial was properly refused. See *Johnson v. Geiger,* 365 Pa. 583, 76 A. 2d 366; *Musgrave v. Slutsky,* 286 Pa. 298, 133 A. 795.

Judgments are affirmed.