35038.   STEINMETZ *et al. v.* CHAMBLEY.

520

Decided July 8, 1954—Rehearing denied July 27, 1954.

*Nall, Sterne & Miller*, for plaintiffs in error.

*Carl Johnson, Sam Hewlitt, Jr., Hewlitt, Dennis, Bowden & Barton*, contra.

Quillian, J. Mrs. Claudie Ophelia Chambley brought suit in Fulton Superior Court against J. C. Steinmetz, C. B. Whitaker and J. A. Hudson, individually and as partners doing business as J. C. Steinmetz & Company, seeking to recover damages for the alleged wrongful death of her son.

The cause of action declared upon arose out of a collision between an automobile driven by the plaintiff's son and a mail bus operated by the defendants on State Highway 18 about one mile west of the town of Zebulon. The evidence showed that the road at the point of the collision curved sharply to the north from its westerly direction and traversed a bridge just to the northwest of the curve; that the defendants' bus was traveling east on the highway and the plaintiff's son was driving his automobile west, rounding the curve. The evidence was in conflict as to whether the bus was over the center line of the highway or not and as to the speed of the automobile driven by plaintiff's son, but there is no dispute that the automobile in rounding the curve began to skid prior to the collision and was skidding and

turned at an angle at the point of collision and that the left rear fender of the automobile struck the left front of the bus. Plaintiff's son was killed as a result of this collision.

Upon the trial of the case a verdict for the plaintiff for $40,000 was returned. The defendants moved for a new trial on the general grounds and amended by adding ten special grounds, numbered 4 through 13. The trial court denied that motion and the exception here is to that ruling.

1. In ground four of the amended motion the defendants contend that the verdict was excessive. It was for $40,000, but there is nothing in the record that indicates that the jury did not give fair, unprejudiced consideration to the case and conscientiously assess such amount as in their opinion was fair compensation for the financial loss suffered by the plaintiff in the death of her son. The evidence as to the cause of his death was in conflict. If the jury had accepted the defendants' evidence as to what caused the collision it would have warranted a finding for the defendants, but if they believed that the collision was proximately caused by the defendants' negligence as contended by the plaintiff the verdict returned was warranted. The evidence also showed without dispute the expectancy of the plaintiff's son, who was 22 years old, and that his earning capacity was $75 per week. It is the rule that verdicts in actions for damages are not ordinarily disturbed by the courts if they are predicated upon facts that support them both as to liability of the defendant and the amount of damages sustained by the plaintiff. *Gainesville Coca-Cola Bottling Co.* v. *Stewart,* 51 *Ga. App.* 102 (1) (179 S. E. 734); *Yellow Cab Co.* v. *Adams,* 71 *Ga. App.* 404 (31 S. E. 2d 195); *Callaway* v. *Cox,* 74 *Ga. App.* 555 (2) (40 S. E. 2d 578). This ground of the motion was properly overruled.

2. Ground 5 of the amended motion complains that despite the fact that the petition did not allege as an act of negligence that the defendants' bus driver passed another vehicle at a point where the lines in the center of the pavement indicated that passing was prohibited, the court admitted evidence concerning center line on the pavement over their timely objectio was irrelevant.

The evidence objected to was the testimony defendants' witnesses adduced by the plaint

.nation, as follows: "On the other side of the bridge, if you will notice the photograph—on the east side of the bridge, if you will notice in the photograph, there is tar in the center of the road in the place of a white line, therefore, to me, it was a broken line. A solid white line starts on the bridge, I believe, and no tar is poured over that white line. That indicates no passing. That line that I am talking about starts on the west side of the bridge and goes right to the edge of the bridge and goes right across the bridge and then goes around that curve and up that hill. On D-18 you can see the white line, but—you can see the marks there. Bus 7 and Defendants' 4 is the picture; as you come off from the east end of the bridge, and almost up to the drain culvert near where the collision occurred, you can see that solid white line as you go off that bridge in this picture. I had been traveling over this particular roadway two years; one day per week. I was familiar with the highway, that curve and bridge. And I know from my own experience, before, that this locality was just as I have described in my testimony. And I know that there was a solid white line on this bridge warning you not to pass."

The objection was properly overruled by the court for the reasons: The defendants had themselves offered evidence concerning this very white line. Some of this evidence consisted of pictures at and near the scene of the collision between the defendants' bus and the automobile in which the plaintiff's son was riding. Other evidence concerning this center line was the testimony of John L. Kennon, as follows: "Referring to my testimony at the Reed trial, I remember this question was asked me: 'What, if anything, did he tell you with regard to whether his car, the car in which he was riding, skidded?' And I answered: 'He said they applied the brakes and skidded into the front of the bus.' And this next question was: 'What, if anything, did he say following that with regard to whether his car that he was riding in, ever got over the center line?' and I answered: 'Will you please repeat that question,' and the next was: 'The question was, what, if anything, Mr. Looser with regard to whether his car, the car he was riding over the center line of the road,' and I answered: know if his car was over the line at the time

of the collision.' " However there was also other testimony of this witness on cross-examination as to the center line that was unobjected to.

If one party to a case introduces inadmissible evidence, this does not license the other party to do the same. *Stapleton* v. *Monroe*, 111 *Ga.* 848 (36 S. E. 428). But, where evidence is objected to and thereafter the objecting party allows other evidence of the same nature to be introduced without objection, it is well settled that his objection is not good. *Mutual Life Ins. Co.* v. *Burson*, 50 *Ga. App.* 859, 861 (10) (179 S. E. 390).

But, had no other evidence as to the white line been introduced the objection would not, even then, have been well taken. It is true that there was no specification of negligence on the defendants' part that their driver passed a vehicle at a point where the white line indicated that it was unsafe for one vehicle to pass another, but the petition in paragraph 18 did charge that the defendants, through their driver, committed acts of negligence in that: "(a) In driving said bus at the great, rapid and reckless speed aforesaid having in view the character of the locality and the use of said road; (b) In operating said bus upon a public highway as aforesaid at a speed greater than was reasonable and safe having due regard for the width, grade and character and common use of said highway and in such a manner as to endanger the life and limb of petitioner's said son in violation of the State law. . . (f) In overtaking and passing another vehicle traveling in the same direction when the way ahead was not clear of approaching traffic and when the width of the roadway was not sufficient to allow the bus to pass the overtaken vehicle to the right of the center of said highway, in violation of the State law."

The evidence as to the white line would have been illustrative of the character of the road at the situs of the collision, as to whether the road at that point was of such width, and in such condition and so located as to curves that passing another vehicle might endanger the occupants of one approaching from the opposite direction. And even the purpose of the white line was evidence as to whether it was negligent for a vehicle to pass another as set out in subhead (f) of paragraph 18 of the petition.

This is analogous to the situation posed by a crossing marked

"unsafe" under Code § 95-1801. The fact that one goes upon such crossing without stopping, in violation of the Code section, cannot be alleged as an act of negligence, yet the jury is permitted to consider whether the driver of an automobile, in approaching and going upon such crossing, was not warned of its dangerous character. The trial court did not err in overruling this ground of the motion.

3. The 6th ground of the amended motion complains because the trial court refused to allow a witness for the defendant, while on cross-examination, to refer to his notes to refresh his memory to aid him in identifying one photograph (of several introduced in evidence by the defendant) which showed tire skid marks on the highway and which had been testified about by the witness on direct examination. Pictures are ordinarily better evidence of what they purport to show than a witness attempting to testify to what is shown by them. However, when objects on photographs of any kind are not easily distinguishable as they appear in the picture, explanatory testimony of a witness familiar with the scene where the photograph was taken may be helpful. For instance, if there is a dark streak on the pavement which is not easily identified by examination of the picture as a skid mark made by a vehicle at the time of the collision, a shadow on the road, or a grease stain or mark made on an occasion other than the collision under investigation, the explanation of a witness might aid the jury better to understand the picture. In view of what is said in the foregoing discussion, the trial court did not err in not permitting the witness to refer to his notes for the purpose of refreshing his memory.

Code § 38-1707 provides: "A witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he finally shall speak from his recollection thus refreshed, or shall be willing to swear positively from the paper." This court has held that a witness may testify from his memory refreshed by a writing that he made, though he has no independent memory of its contents. *Brown-Rogers-Dixon Co. v. Southern Ry. Co.*, 79 *Ga. App.* 449, 451 (4) (53 S. E. 2d 702); *Akins* v. *Georgia R. & Bkg. Co.*, 111 *Ga.* 815 (3) (35 S. E. 671).

So here the question was not one of the witness's memory, but rather of his ability to identify a photograph that showed the

skid marks that he had testified on direct examination it would reveal.

It is a matter of common sense that when a picture is presented to a witness and he is asked if he can point out something in the picture, that if he could not do so by looking at the picture, he certainly could not by looking at some writing whether made by him or another. The witness could identify the pictures that showed the tire marks by examining the pictures themselves, if he could do so at all, and the trial court correctly so held.

Moreover, the witness himself testified that he could identify the marks on the pavement and find the photographs referred to in the cross-examination without referring to his notes, his testimony being as follows: "Here is one that is closer up, identified as Auto 9 [referring to a photograph]. Your question was: 'You didn't find that without your notes, did you? Answer my question. You didn't find this without your notes, did you?' My answer is I was looking at the picture that would show the skid marks. I refreshed my recollection by my notes to see the marks, it is nearer than the previous one, than the one we had. I did not have to look at my notes to find this picture. I didn't really, I didn't look at them, but I say I didn't have to look at the notes to find this picture. I did look at them before I found this picture, but the notes did not identify the skid marks in the road."

So the ruling requiring him to testify in reference to the photographs without his notes was not only correct but not hurtful to the defendants.

4. The seventh ground of the motion for a new trial is upon the ground that the court erred in overruling the defendant's motion for a mistrial on account of prejudicial comments and conduct of the court in connection with the ruling of the court requiring the witness to testify concerning certain photographs of the situs of the collision in which plaintiff's son was fatally injured.

Having held in the next preceding division of this opinion that the ruling of the court was correct, the question that remains is whether the language and behavior of the judge in enforcing it was improper and prejudicial to the defendant's defense.

The motion was made in the following language: "Mr. Nall:

'Your Honor, I would like to make a motion at the appropriate time with regard to the witness using his notes at the point at which I made the request.' The Court: 'You made the request when that occurred?' Mr. Nall: 'If the Court will remember, there was some confusion at the time, and I can't repeat the exact language used, but it is a question of whether the language of the Court was prejudicial or not to the defendants in expressing an opinion as to the veracity of the witness. The exact language that the Court used in connection with that ruling I think would be remembered by the jury, and it is a question of the effect it will have on the witness' testimony; and I think it is proper for any witness to use any of his own notes for the purpose of refreshing his recollection, and it is improper on the part of the Court to prevent him from using his notes to refresh his recollection while testifying. I cannot repeat the exact language of the Court, Mr. Smyly will have whatever it was.' "

Pretermitting discussion at this point as to the sufficiency of the motion to present a good motion for mistrial, we immediately take up the propriety of the court's actions and speech to which the motion refers.

The language of the court in one instance in making the ruling was: "Let's see what he can do; if he can't testify from the picture, he can't testify" and at another stage of the witness's testimony while referring to his former ruling the court said to the witness: "He asked you whether or not you were able to identify that picture without having to look at your notes." We can see nothing in this language that was improper or unfair, or that reflected upon the witness. The first expression simply meant that the court was requiring the witness to identify a certain picture (that the witness himself stated he could identify) without referring to the memorandum.

The action of the court complained of in the motion for a mistrial was that the court took the witness's memorandum and turned it over. It appears from the record that the witness had misunderstood the instructions given him in the court's ruling that he not refer to his notes, and frankly admitted that after the ruling and before the court turned the memorandum over he, in perfect good faith, and with no intention to disobey the court, continued to refer to his notes. In view of this, it is apparent

that the judge was simply undertaking to secure obedience to his ruling; and since it does not appear that the court showed the slightest feeling of irritation or impatience in just turning the notes over, we perceive nothing amiss in this action on his part.

The motion for mistrial, which we prefer to thoroughly consider on review of the case, rather than to brush it aside for purely technical reasons, should have pointed out what comments and what conduct of the court the motion referred to. This it did not do.

5. The 8th ground presents the defendants' contention that the overruling of a motion of its counsel for a mistrial was error. The motion was in the following language: "Mr. Nall: 'May it please the Court, I move for a mistrial upon the ground that counsel for the plaintiff has seeked (sic) to impress on the jury, on cross-examination of Mr. Kennon, through this line of examination, his questions were calculated to bring out insurance in the minds of the jurors; and it is highly prejudicial; and I am therefore moving the Court to declare a mistrial.'" The motion for mistrial was not predicated upon the testimony of any witness as to insurance, but was based upon the ground that certain questions were propounded by plaintiff's counsel to one of defendants' witnesses on cross-examination; that they tended to elicit information as to the defendant being covered by insurance.

The questions referred to in the motion were propounded to the defendants' witness one Kennon who was the claim adjuster who had procured and assembled a considerable part of the defendants' evidence, and had evidently been very active and efficient in the preparation of the case. This witness, it appeared, was an employee of an insurance company, who, though not a party, was interested in the case from the standpoint of being the defendants' insurance carrier.

The questions propounded were admissible for the purpose of illustrating the witness's interest in the result of the case by showing that he was a well-paid employee of the defendant. Nor were the questions apparently designed to inject the matter of whether the defendant bus company was insured. The witness volunteered the information as to the insurance; he could have easily avoided doing so, and have made his answers nonetheless responsive to the questions of plaintiff's counsel.

The questions and answers referred to were: "Q. Now Mr. Kennon, who sent you down to make that investigation? A. The employees of the bus company. They employed me to go down there. Q. Do they pay you so much a day to go down there? A. I can explain that. Q. The bus company, as I understand it, you might explain it? A. The insurance was carried by another company."

It has been held that the fact that the information concerning insurance is not designedly brought out by counsel is immaterial and that the real question for consideration in cases where evidence as to insurance is improperly given by a witness is whether under the facts of a particular case the evidence is prejudicial, and that the evidence may have been spontaneous on the witness's part, and not responsive to the questions of counsel makes no difference if it is so prejudicial in its nature that its effect can not be eradicated from the jury's minds, or its consequences avoided by proper cautionary instructions by the court. *Decatur Chevrolet Co.* v. *White,* 51 *Ga. App.* 362 (180 S. E. 377). If the damage done by the mention of insurance cannot be remedied a mistrial must be granted, and in some cases rebuke of the party through whose fault it was injected into the case is not sufficient. *Minnick* v. *Jackson,* 64 *Ga. App.* 554 (2) (13 S. E. 2d 891).

It is, however, well settled that because the witness mentions insurance as a part of competent testimony, it is not ground for a mistrial or even the exclusion of the evidence. *Barbre* v. *Scott,* 75 *Ga. App.* 524, 530 (43 S. E. 2d 760); *Wade* v. *Drinkard,* 76 *Ga. App.* 159 (5) (45 S. E. 2d 231).

The witness, an employee of the defendants' insurance carrier, who had very actively assisted in the preparation of the defendants' defense, having volunteered the information as to the insurance under the circumstances above related, the court did not abuse his discretion in refusing to grant a mistrial. However, in this case it did not appear that the rights of the defendant were prejudiced. Moreover, the defendant did not show in this ground of the motion for new trial that the mere allusion to an insurance company, without more, was hurtful to it, it not being made to appear that the jury had not been interrogated as to whether they were stockholders, or kin of stockholders, of

the insurance company at the time they were qualified. If they had been so qualified, they were already informed that the defendant was insured. This being true, the mere mention of insurance brought to their attention no new fact.

6. The 10th ground of the motion assigns error on the following charge: "Gentlemen, I also give you in charge the following principle of law: If the jury should find that the plaintiff's decedent was negligent, and that his own negligence contributed to his injury, and that the defendants were negligent, and that their negligence contributed to the injury of the plaintiff's decedent, then it would be the duty of the jury to determine the degree of negligence of plaintiff's decedent contributing to his injury, and the degree of the defendants' negligence contributing to the plaintiff's decedent's injury; and if in doing so, the jury should find that the degree of negligence of the plaintiff's decedent contributing to his injury was equal to or greater than the degree of negligence attributable to the defendants, causing injury to the plaintiff's decedent, the plaintiff would not be entitled to recover. However, if the jury should find that the degree of negligence attributable to the plaintiff's decedent was less than that attributable to the defendants, the plaintiff would be entitled to recover, but not the full amount of her damages; those damages, when ascertained, should be reduced by the jury in proportion to the degree of negligence attributable to the plaintiff's decedent."

The imperfection in the charge pointed out by the motion is that the charge did not instruct the jury that the negligence therein referred to was such negligence as proximately caused or contributed to the injuries of the plaintiff's son. The charge as a whole must be looked to in determining whether it is correct and sufficiently comprehensive to fairly submit the principles of law by which the jury is to be guided in determining the issues of the case. It is not necessary for the trial judge to resort to needless repetition of a word or rule of law in charging on every other related subject, if he makes it clear in his instructions to the jury that such word or rule is applicable to every phase of the case to which it is appropriate. *Grady County* v. *Banker*, 81 *Ga. App.* 701 (2) (59 S. E. 2d 732).

In the instant case the court charged in very plain language

that no negligence of the defendant could be considered unless it proximately caused the decedent's injuries. The language of his instructions was: "Gentlemen, by proximate cause is meant that cause which produces and brings about an event and without which the event would not have occurred. An event is said to have resulted proximately from an act when the result flows naturally from and is reasonably to be expected from said act.

"To state it more simply, if you should find that the defendants were negligent in some one or more of the particulars charged, but you should further find that an act or acts of the plaintiff's decedent intervened, then the original alleged negligent act or acts of the defendants could not be held to be the proximate cause unless the said act or acts of the plaintiff's decedent were harmless and innocent in themselves, and of a nature which might have been anticipated, or unless the defendants' act or acts induced the act or acts of the plaintiff's decedent."

There is nothing in the language quoted that could be understood as a modification of the court's charge on proximate cause. Consequently, since the court had evidently instructed the jury that the only negligence of the defendant that could be considered was such as proximately caused the injuries to the plaintiff's son, the jury could not have understood that the negligence of the defendants referred to in the portion of the charge complained of referred to any negligence of the defendants except that which proximately caused the injuries to the plaintiff's son.

Furthermore, the defendants cannot complain that the court did not, in charging the rule of comparative negligence above referred to by using the qualifying word "proximate" or otherwise instructing the jury that in order for negligence of the plaintiff's son to defeat or diminish the amount of the plaintiff's recovery it must have proximately caused his injuries, for the reason that the omission, if error, was favorable to the defendants.

7. Complaint is made of the charge to the jury, in ground twelve of the motion, as follows: "If you find that the defendants were negligent in one or more of the ways alleged in the petition, and as a result thereof, the plaintiff's decedent was killed, and a reasonably prudent man situated as the plaintiff's decedent was could not have avoided the injury, you would be authorized to find for the plaintiff on that issue."

The charge was correct. It was not subject to the criticism made of it that it instructed the jury that the plaintiff would be entitled to recover under the conditions it recites, whether the deceased was negligent, or if his negligence equaled or exceeded that of the defendants before he observed the defendants' negligence. The court had already charged on the subject of comparative negligence, had thoroughly informed the jury that the plaintiff was not entitled to recover damages if the negligence of her son, the deceased, was equal to or greater than that of the defendant, and did not limit the time at which equal or greater negligence on the part of the deceased in causing the collision to that period of time after the negligence of the defendant was observed by the deceased or could have been discovered by him.

There was no necessity of repeating the instruction on comparative negligence at the various stages of the court's charge on other legal principles.

8. Ground 11 does not attack the charge of the court on the subject of comparative negligence, but it does assign error because the court did not without request charge in connection therewith: "The plaintiff would not be entitled to recover if the negligence of the deceased, prior to the time of the discovery by him of the defendants' negligence, if any, or to the time when it, if any, should have been discovered by the exercise of ordinary care, was greater than that of defendants, or equal to it, irrespective of whether the deceased could have thereafter avoided the negligence of the defendants by the exercise of ordinary care."

For two reasons the ground does not show error. First, the charge given by the court was full and fair, and the only logical meaning that could be attached to it, since it did not limit the negligence on the part of the deceased to that which occurred after the defendants' negligence was discovered or discoverable, was that it referred to any negligence of which the deceased was guilty at any time, and that caused or contributed to the cause of the collision resulting in his death. In the second place the above-quoted charge which the movant contends should have been given is not itself entirely correct in that it should contain the qualification that the negligence of the deceased therein referred to caused or contributed to the cause of the deceased's

death, or of the collision in which he sustained his mortal injuries.

9. Complaint is made in the 12th ground of the motion for a new trial that the court charged the jury as follows: "If you find that the defendants were negligent in one or more of the ways alleged in the petition, and as a result thereof, the plaintiff's decedent was killed, and a reasonably prudent man situated as the plaintiff's decedent was could not have avoided the injury, you would be authorized to find for the plaintiff on that issue."

For the same reasons that it was not error to refuse to give the charge referred to in the next preceding division of this opinion, there was no error in giving the above-quoted instructions to the jury. These instructions did not limit the negligence on the part of the deceased to that which occurred after the defendants' negligence was discovered or discoverable.

10. Ground 13 of the amended motion complains that, after charging the jury as to the proper method of arriving at the present value of the deceased's life by using the mortality tables, the court instructed the jury that they were not required to use the mortality tables, and did not instruct them as to the basis of determining the value of the deceased's life without using the tables.

The plaintiffs in error further insist that since the verdict was in the "round figure" of $40,000 it was evident that the tables were not used.

The charge is subject to criticism that it did not, except in connection with instructions as to the use of the mortality tables, give to the jury a guide as to the basis upon which it would calculate the amount of damages the plaintiff in the lower court was entitled to for the loss of her son's life. However, it cannot be determined by perusal of the record that the omission to give instructions as to the method of arriving at the amount of damages other than by use of the tables was hurtful to the defendant, because, whether calculated by use of the tables or not, the amount found by the jury was not in excess of that authorized by the evidence. Moreover, there is nothing in the record that shows for a certainty that the tables were not used.

11. This case was especially well presented on all points raised, and the argument of counsel for the defendant is impressive, but after careful and thoughtful review of the record we

are constrained to hold that the verdict was authorized by the evidence, and while for a large amount, there is no indication of bias or prejudice on the part of the jurors.

*Judgment affirmed. Felton, C. J., and Nichols, J., concur.*