43310.   CITY OF MACON v. SMITH et al.

ARGUED JANUARY 8, 1968—DECIDED FEBRUARY 20, 1968—
REHEARING DENIED MARCH 7, 1968—CERT.

366

*Harris, Russell & Watkins, Philip R. Taylor,* for appellant.

*Buford E. Hancock, Melton, McKenna & House, Buckner F. Melton, Mitchell P. House, Jr., Jones, Sparks, Benton & Cork, Ed L. Benton, Carr Dodson,* for appellees.

EBERHARDT, Judge. ■ One of the crucial issues in the case below was whether the ambulance driver was operating an "authorized emergency vehicle . . . responding to an emergency call" so as to be entitled to the privileges set forth in *Code Ann.* § 68-1604. That section provides:

"(a) The driver of an authorized emergency vehicle, *when responding to an emergency call,* . . . may exercise the privileges set forth in this section, but subject to the conditions herein stated.

"(b) The driver of an authorized emergency vehicle may: . . .

"2. Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation.

"3. Exceed the speed limits specified in this law so long as he does not endanger life or property. . .

"(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."

It is not disputed that the ambulance was an authorized emergency vehicle as defined by *Code Ann.* § 68-1502 (e), or that the siren and light were in operation as required by *Code Ann.* § 68-1604 (c). The controversy centers around whether the driver was "responding to an emergency call" within the meaning of *Code Ann.* § 68-1604 (a) so as to be entitled to exercise the privileges afforded emergency vehicles. Enumerations of error 6, 8 and 9 complain that the court erred in failing to give in charge defendant city's requests numbers 2, 7 and 8. These requests, if given, would have instructed the jury that the evidence conclusively showed that Joiner was responding to an emergency call and that the rules respecting the operation of emergency vehicles should be applied by the jury; that whether the ambulance was being operated in response to an emergency call depended solely upon instructions received from the hospital and could not be determined by consideration of the evidence as to the nature of the illness of the decedent, Joiner not being competent or qualified to make any independent determination as to the nature or extent of the illness; and that Joiner had no alternative to consider the call anything but an emergency call until his instructions were countermanded by competent authority. Plaintiffs contended below and here that the issue of "emergency call" was one of fact for the jury, and the trial court so charged. On the other hand defendant city contends, as stated in the brief, that "there was only one party involved in this case which could have or should have determined whether or not the call was an emergency call, that being Mr. Joiner's superior at the Macon Hospital." It is argued that since Joiner's superior instructed him to treat the call as an emergency, the instructions he received were conclusive on the issue.

There was no error in refusing to give the requested instructions. While we find no authority in our own courts on the issue involved here, the general rule which has been applied elsewhere

is that whether a vehicle is driven in response to an emergency call depends not upon whether there is an emergency in fact but upon the nature of the call received and the situation as presented to the mind of the driver. Head v. Wilson, 36 Cal. App. 2d 244 (97 P2d 509); Coltman v. City of Beverly Hills, 40 Cal. App. 2d 570 (105 P2d 153); Gallup v. Sparks-Mundo Engineering Co., 43 Cal. 2d 1 (271 P2d 34); Stucker v. McMains, 71 Cal. App. 2d 35 (161 P2d 997); Lakoduk v. Cruger, 48 Wash. 2d 642 (296 P2d 690). See also Delgado v. Brooklyn Ambulance Service Corp., 29 Misc. 2d 454 (211 NSY2d 297); Bravata v. Russo, 41 Misc. 2d 376 (245 NYS2d 702); Simkins v. Barcus, 168 Pa. Super. 195 (77 A2d 717); White v. City of Casper, 35 Wyo. 371 (249 P 562). In making this determination "it is not only material, but essential, to consider such facts as disclose the nature of the call which was being answered. This involves both a statement of the substance of the call as it came into the hospital and the substance or terms of the call as communicated to the driver of the ambulance." Head v. Wilson, 36 Cal. App. 2d 244, 251, supra.

In this case the record is silent as to the substance or nature of the call as it came in to the hospital, and consequently there is. no basis upon which to rest the contention that the instructions issued by defendant city's hospital to its ambulance driver constituted the sole determining factor which established conclusively that the ambulance was "responding to an emergency call." If, as contended by the city, the clerk at the hospital was the only person who could have or should have determined that the call was an emergency, some basis must appear in the record to justify the determination actually made by the clerk. It is not enough that the clerk truly believed that an emergency existed—the clerk must have had reasonable grounds for such belief. Cf. Delgado v. Brooklyn Ambulance Service Corp., 29 Misc. 2d 454, supra; Bravata v. Russo, 41 Misc. 2d 376, supra; Gallup v. Sparks-Mundo Engineering Co., 43 Cal. 2d 1, supra.

The burden of proving the affirmative defense that the defendant is entitled to statutory exemptions from traffic regulations rests upon defendant (*Myerholtz v. Garrett,* 111 Ga. App. 361, 362 (2) (141 SE2d 764)), and in order that a defendant may

claim exemptions applicable to emergency vehicles the conditions of the emergency-vehicle statute must be met. *Poole v. City of Louisville,* 107 Ga. App. 305, 306-307 (130 SE2d 157). The condition of the statute involved here is that the ambulance must have been "responding to an emergency call." Hence the trial court did not err in refusing to require the jury to find that the ambulance was "responding to an emergency call" so as to be entitled to the statutory exemptions claimed under defendant's affirmative defense, but properly left it as a question of fact for the jury. Accordingly Enumerations of error 6, 8 and 9 are without merit.

Similarly, Enumeration of error 7, complaining of the court's failure to give the city's request to charge number 6 is without merit. This request states that the speed limit on Pio Nono (Napier?) Avenue was 35 m.p.h. for vehicular traffic other than the ambulance. Since the ambulance was not exempt from the speed regulations as a matter of law, there was no error in failing to give the requested charge.

■ Enumeration of error 1 complains that the court erred in allowing, over defendant's objection, testimony of Smith as to whether or not he advised Joiner that the trip to the hospital with decedent was an "emergency run." Assuming for the purposes of argument that the evidence was inadmissible and that proper objection was made, evidence to the same effect was elicited from the same witness by counsel for plaintiff without objection, as well as by defendant's counsel, subsequent to the testimony complained of. Hence no reversible error appears. *Lowe v. Athens Marble &c. Co.,* 104 Ga. App. 642, 643 (122 SE2d 483); *Weston v. City Council of Augusta,* 114 Ga. App. 804 (1) (152 SE2d 700); *Hopper v. McCord,* 115 Ga. App. 10 (1) (153 SE2d 646).

■ Enumeration of error 2 complains that the court erred in admitting into evidence a photograph of deceased taken after the collision, lying on the stretcher to which she had been strapped in the ambulance. Defendant contends that the admission of the photograph was highly prejudicial and calculated to inflame the minds of the jury in view of the fact that counsel had stipulated that she was dead. Counsel for the city did not stipulate, how-

ever, that deceased died from injuries received in the collision, a vital issue to plaintiffs' case. Later in the trial, counsel for co-defendant, in cross examining Dr. Campbell, who performed an autopsy on deceased, sought to prove that death resulted from organic heart disease rather than from injury. Thus the photograph was relevant and material to show the severity of the impact of the collision and the nature and extent of the injuries, thereby indicating the cause of death. This enumeration of error is without merit. *Cagle Poultry &c. Co. v. Busick*, 110 Ga. App. 551 (1b) (139 SE2d 461).

■ Enumeration of error 3 complains that the court erred in refusing to grant a motion for mistrial made when counsel for plaintiffs stated in a colloquy with the court: "Your Honor, my questions now are not related to any wreck that the Macon Hospital ambulance may or may not have had. My question now is of this witness's knowledge of the propensity of emergency vehicles to have wrecks, and I think this witness will admit. . . ." The colloquy occurred during a discussion of defendant city's objections to a question asked by plaintiff's counsel of Joiner as to his knowledge of the number or percentage of wrecks involving emergency vehicles. This question was part of a line of questioning on cross examination as to the ambulance driver's knowledge and experience in operating emergency vehicles. The question was not answered and was withdrawn during the colloquy.

If this was an improper statement by counsel of prejudicial matters not in evidence as contemplated by *Code* § 81-1009, the trial judge did not abuse his discretion in denying the motion for mistrial, since he substantially followed the procedure as set forth in that section. The judge interrupted counsel for plaintiffs during the colloquy as he was withdrawing the question, stating, "If, of course, you don't plan on going into it, that's fine, but in any event I can see no relevancy in this case in what happened or what he might know about some other vehicles, and I would sustain the objection to *that type question* and *instruct counsel that it has no bearing in this case.*" The court went on to instruct the jury not to consider anything that the witness might or might not know about other people being in-

volved in other wrecks and further instructed them to confine their deliberations to the facts of the particular occurrence in question.

Where counsel is guilty of improper conduct under *Code* § 81-1009 and the court takes the corrective measures there prescribed, the granting or denial of a motion for mistrial rests in the legal discretion of the court. Cf. *Atlantic C. L. R. Co. v. Coxwell,* 93 Ga. App. 159, 168 (10) (91 SE2d 135); *Ga. Power Co. v. Puckett,* 181 Ga. 386, 393 (3-5) (182 SE 384). We disagree with defendant city's contention that the corrective measures were not sufficiently taken, and consequently the holdings of *Atlantic C. L. R. Co. v. Coxwell,* 93 Ga. App. 159 (10), supra, *Atlantic C. L. R. Co. v. McDonald,* 103 Ga. App. 328 (3) (119 SE2d 356) and *Ga. Power Co. v. Puckett,* 181 Ga. 386, 393 (3-5), supra, where little or no corrective action was taken, are not in conflict with, but support, what we here hold. See also *Mathews v. Mathews,* 222 Ga. 311 (2) (149 SE2d 666).

Enumeration of error 2 is without merit.

■ Enumerations 4 and 5 assign error on the overruling of defendant city's motion for a mistrial made after counsel for the co-defendant, Mrs. Weaver, elicited testimony from the ambulance driver regarding a statement taken by an insurance adjuster. The questions and answers were as follows: "Q. Who is J. M. Weaver? A. Who is who? Q. J. M. Weaver? All right now, in this particular statement right here, have you seen this before? A. It looks like the statement that I gave the insurance adjuster at the hospital." Defendant city contends that this testimony tended to show that the Macon Hospital had a policy of liability insurance in effect which might afford protection to the hospital, in violation of *Code Ann.* § 56-2437 (2) which provides: ". . . No attempt shall be made in the trial of any action brought against a municipal corporation, county or any other political subdivision of this State to suggest the existence of any insurance which covers in whole or in part any judgment or award which may be rendered in favor of the plaintiff. . ."

The statutory provision is a salutary one and should be scrupulously observed by all, but under the circumstances here these enumerations of error are without merit. The witness' answer

does not on its face suggest that the Macon Hospital had a policy of automobile liability insurance but only indicates that the statement was taken at the hospital, the witness' place of employment. The answer does not state that the adjuster was employed by the motor vehicle insurance carrier of the hospital —so far as the answer reveals, the adjuster could have been employed by a company in which the deceased held a policy of some type of insurance, or by the automobile insurance carrier of the co-defendant. As a matter of fact counsel for defendant city stated to the court below that the adjuster was employed by the separate automobile insurance carriers of both defendants, a fact reiterated in the briefs. Since both defendants had insurance in two different companies we cannot construe the witness' answer as singling out the City of Macon for insurance coverage. This is not a case where plaintiffs' attorney emphasized by invidious intention and design the fact that the city or anyone else was insured in any manner—the question to which the answer was given was asked by counsel for co-defendant who represented a company also employing the adjuster, and the answer was to some extent volunteered by defendant city's employee and principal witness in identifying the statement. Furthermore, the court instructed the jury to disregard the witness' response, particularly in regard to the matter of whom he gave the statement to.

In view of the foregoing we cannot hold that the court abused its discretion in denying the motion for mistrial, and Enumerations 4 and 5 are without merit. See *Steinmetz v. Chambley*, 90 Ga. App. 519 (5) (83 SE2d 318); *Sutherland v. Woodring*, 103 Ga. App. 205, 214 (3) (118 SE2d 846); *Southern Poultry Co. v. Fletcher*, 113 Ga. App. 374 (147 SE2d 870); *Petway v. McLeod*, 47 Ga. App. 647 (3) (171 SE 225); *Bramlett v. Hulsey*, 98 Ga. App. 39, 42 (2) (104 SE2d 614).

■ The court charged the jury that the parties had stipulated that the speed limit on Napier Avenue up to the beginning of the intersection was 35 m.p.h. Counsel for plaintiffs and for the city both excepted, and the court recharged that the stipulation of the parties was that the speed limit on Napier was 35 m.p.h. to Pio Nono Avenue and 30 m.p.h. from Pio Nono onward. It is

contended that the court erred in the charge in that it did not inform the jury what the speed limit was at the point of impact in the intersection itself.

There is no merit in this contention. The speed limits in question were fixed by a municipal ordinance which was not introduced into evidence and proven. It does not appear in the record on appeal. The parties in their oral stipulation during the trial were unable to agree what the ordinance provided in regard to the speed limit at the point of impact in the intersection, and the only basis which the judge could have used to charge the jury was the stipulation itself. The judge charged this as he understood it and as we understand it, and hence no error appears. We share the sentiment expressed in the trial judge's remark: "Well, I can't see how you can stipulate to agree to something when one of the parties is disagreeable to it."

Enumeration 13 is without merit.

■ The court in its charge instructed the jury that in the event they found for the plaintiff the form of their verdict would be, "We, the jury, find for the plaintiffs in the sum of so many dollars, *not to exceed the sum sued for. . .*" The italicized portion of the charge is not an indication or expression of opinion by the court as to the value of the life of the deceased in violation of *Code* § 81-1104. *Service Wholesale Co. v. Reese,* 91 Ga. App. 366, 368 (4) (85 SE2d 625); *National Upholstery Co. v. Padgett,* 111 Ga. App. 842, 845 (3) (143 SE2d 494).

8. Enumeration 11 complains that the court erred in its charge as to the value of the life of the deceased by failing to instruct the jury that after finding the full value of the life of the deceased, they would then reduce that amount to its present cash value. Plaintiffs contend, on the other hand, that the law does not require reduction to present cash value of a sum representing the full value of the life of a mother where there is no proof before the jury of earnings or earning capacity and no direct proof of monetary value of services and where instead the jury was instructed to determine the full value of the life in the light of the jurors' own observations and experience and to the satisfaction of their own consciences.

There is no evidence in the record as to earnings or earning

capacity of the deceased or as to the monetary value of her services. The court charged the jury that in measuring the value of the mother's life they were not confined to any inflexible rule; that they might consider the age of the mother, which was 64, her health, life expectancy, and habits; that the value of the life of a mother is not determined solely by the amount of money, if any, she may have earned as a worker for wages, or the actual domestic services that she may have performed for the benefit of her children; that the jury was not required to view a mother as a servant, for the law recognizes that the children's privilege of having their mother with them is a privilege which is incalculably precious to them and is an element which could be considered; that a mother performs services of a peculiar nature which can be performed by no other person and which are invaluable and incapable of exact proof; that the value of a mother's services is not dependent upon proof of any particular services which are particularly performed by a mother but may be determined from the fact of the relationship and all the facts and circumstances of the family and their living conditions, and from the jurors' own experience and knowledge of human affairs; and that the facts of the case should guide the jurors in estimating for themselves in the light of their own observations and experience, and to the satisfaction of their own consciences, the amount which represented the full value of the life of the deceased. This constituted the entire charge on damages, and it is not challenged in any respect other than for failure to instruct the jury to reduce the full value of the life to its present cash value.

This enumeration of error is without merit. In a wrongful death action the statutory measure of damages is "the full value of the life" (*Code* § 105-1308), and we know of no authority in law which requires that the "full value" itself, *once arrived at,* must be reduced anymore than "market value," once arrived at, must be reduced in cases where that measure of damages is applicable. In *arriving* at the "full value" the jury may take into consideration various items which must *themselves* be reduced to present cash value, such as the lifetime income of the deceased, if any, or the value of services rendered by a deceased

wife or mother where there is direct evidence of the monetary value of such services. See *Standard Oil Co. v. Reagan,* 15 Ga. App. 571 (84 SE 69) ; Har-Pen Truck Lines, Inc. v. Mills, 378 F2d 705 (5th Cir.). Defendant argues as if the value of the services of deceased in this case is synonomous with "the full value of the life." But the jury is not bound to find that such items reduced to present cash value constitute solely the full value of the life, as they are aids only in making this determination. *Rhodes v. Baker,* 116 Ga. App. 157, 162 (4) (156 SE2d 545). In addition to the proven monetary value of a mother's services reduced to present cash value, the jury may add an additional amount, under the rule in *Metropolitan St. R. Co. v. Johnson,* 91 Ga. 466 (18 SE 816), by taking into consideration the value of many services rendered by a mother hardly capable of exact proof. *Standard Oil Co. v. Reagan,* 15 Ga. App. 571, 598, supra. There are, of course, situations · in which the plaintiff relies altogether on proof of earnings, or of earning capacity, when it is proper to reduce the whole sum. Under the evidence and charge of the court in this case, the determination of the value of the services of deceased did not depend upon mathematical computation based upon direct evidence of the monetary value of the services but was in effect left to the enlightened conscience of an impartial jury. It therefore seems to be an open question, under the rationale of *Collins v. McPherson,* 91 Ga. App. 347 (85 SE2d 552), whether in a case such as this the value of a mother's services themselves, as only one element going to make up the full value of the life, should be reduced to present cash value. See, however, *Central of Ga. R. Co. v. Keating,* 45 Ga. App. 811, 819 (10) (165 SE 873), companion case reversed in 177 Ga. 345 (170 SE 493). In any event the exception to the charge and the enumeration of error are insufficient to require reversal, as they· are directed to the failure to charge on the reduction to present cash value of the "value of the life" rather than of the value of the services. It is not the "full value of the life," the statutory measure of damages, which must be reduced, but only properly reducible items which aid the jury in arriving at the full value.

■ A verdict of $50,000, approved by the trial judge and awarded to four children as the full value of the life of their 64-year-old mother in "medium health" who provided services for them and actively cared for two of the children who lived with her, one of whom was an epileptic, is not, as contended, excessive as a matter of law so as to require the reversal of the overruling of a motion for new trial, particularly where the jury is authorized to make its verdict under the type of charge as set out in the preceding division of this opinion. For cases approving verdicts in various amounts in wrongful death actions, see *Steinmetz v. Chambley*, 90 Ga. App. 519, supra; *Royal Crown Bottling Co. v. Bell*, 100 Ga. App. 438 (111 SE2d 734); *Hospital Authority v. Adams*, 110 Ga. App. 848 (140 SE2d 139); Har-Pen Truck Lines, Inc. v. Mills, 378 F2d 705, supra, a case originating in the Middle District of Georgia.

■ In its charge to the jury, the court stated: "The defendant City of Macon contends among other things that it was not slightly negligent in any of the ways claimed by the plaintiffs, and if you find this contention to be the truth of this case the plaintiffs could not recover from the defendant City of Macon." The city excepted to the "charge on extraordinary diligence and the charge as to slight negligence," there being no proof that the deceased was a passenger for hire. The court then recharged the jury: "Now in addition, members of the jury, you will recall that I charged you on two different duties of care in this case, one duty of care for one defendant and one duty of care for the other defendant. Now I charge you to disregard the duty of care I charged you as regards to the City of Macon and instead that the duty of care devolving on the City of Macon is the same duty of care insofar as the law is concerned as the defendant Mrs. DeWeese Weaver, and that is the rule of ordinary care and diligence which I charged you regarding Mrs. Weaver. So you will disabuse your minds of any different standards of liability I placed on the City of Macon than the same duty of care that would be on Mrs. DeWeese Weaver. Now you will keep in mind the other elements of the charge heretofore given you. They are still in effect, and those statutes and those other things in the charge

that relate to the burden of proof and the preponderance of the evidence and all of the other elements of the charge are still in effect and these are the only two things that I am changing in the charge heretofore given you."

The recharge was not so vague and confusing as to constitute reversible error on the ground that the court did not specifically charge the jury to disregard its previous charge concerning the duty of extraordinary care and diligence owed by the city, or on the ground that the recharge did not make it clear to the jury what they were or were not to disregard in connection with the court's former charge. These were the only grounds of objection stated on the trial. "Although on appeal plaintiffs argue additional grounds of objection to this charge, review of the charge enumerated as error is limited under *Code Ann.* § 70-207 (a) strictly to the ground of objection stated on the trial. *Georgia Power Co. v. Maddox,* 113 Ga. App. 642, 643-646 (149 SE2d 393)." *Palmer v. Stevens,* 115 Ga. App. 398, 405 (154 SE2d 803).

Enumeration 12 is without merit.

*Judgment affirmed. Bell, P. J., Jordan, P. J., Hall, Pannell, Deen, Quillian and Whitman, JJ., concur. Felton, C. J., dissents from the judgment and from the ruling in Division 8 of the opinion but concurs in all of the other rulings by the majority.*

FELTON, Chief Judge, dissenting. I dissent from the judgment and from the ruling in Division 8 of the opinion. I concur in all of the other rulings by the majority. I think that the enumeration of error and argument constitute a good exception to the charge in question, that the charge itself was erroneous in that it gave the wrong definition of the "full value" of the life of the deceased under the evidence in this case. "The full value of the life of the wife as set out in the Civil Code (1910), § 4425, is its present value, and that is arrived at by determining from the evidence the gross value of the life of the wife, and then reducing this amount to its present cash value. . ." *Central of Ga. R. Co. v. Keating,* 45 Ga. App. 811, 819 (165 SE 873) and cases cited; 77 ALR 1439; *Atlanta & W. P. R. Co. v. Newton,* 85 Ga. 517 (11 SE 776); *Metropolitan St. R. Co. v. Johnson,* 91 Ga. 466, 471 (18 SE 816); *Barnes v. Thomas,* 72 Ga. App. 827, 831 (35 SE2d 364).