[Civ. No. 12623. Second Appellate District, Division Two.—August 30, 1940.]

WILLIAM J. COLTMAN et al., Appellants, v. CITY OF BEVERLY HILLS, CALIFORNIA (a Municipal Corporation) et al., Respondents.

S. S. Hahn and W. O. Graf for Appellants.

Jennings & Belcher and Louis E. Kearney for Respondents.

WOOD, Acting P. J.—Jane Coltman, 23 years of age, was struck by a police vehicle owned and operated by defendant City of Beverly Hills and died as a result of injuries received. This action was commenced by her parents and heirs at law to recover damages for her death. The action proceeded to trial against defendant city alone and, a judgment having been rendered in favor of the city, plaintiffs have prosecuted the present appeal.

Miss Coltman rode on a bus to the intersection of Wilshire Boulevard and Beverly Drive in the City of Beverly Hills and disembarked from the bus at about 1 P. M. on December 26, 1938. She walked north on the sidewalk intending to go to a theatrical performance and as she was in front of the theatre two vehicles owned by defendant city and operated by its police officers collided at the street intersection while responding to an emergency call. One of the vehicles, a sedan, having been knocked by the force of the collision onto the sidewalk, "pinned" Miss Coltman against the building in such manner that the injuries she received resulted in her death.

The siren on the police sedan was being sounded audibly, as was also the siren on a motorcycle, the other police vehicle involved in the accident. The driver of each of the two police vehicles testified that the sounding of his own siren prevented his hearing the noise made by the siren on the other vehicle. The trial court found both drivers were at the time of the accident engaged in responding to an emergency call; that both had been sounding sirens on their vehicles in a manner reasonably necessary and were operating their vehicles with due regard to the safety of all persons using the highway and without the arbitrary exercise of any of the privileges ac-

corded such vehicles. Respondents contend that these findings are not supported by the evidence.

Bearing in mind the rule that the findings of the trial court must be sustained if there is substantial evidence in their support, it must be held that the attack upon the court's finding that the vehicles were responding to an emergency call is without merit. Officer McCartney testified that it was his duty to take all emergency calls coming into the police department and that at about 12:45 P. M. in the afternoon in question, when he answered the police desk telephone, "a man in a very excited voice said to send some officers to Lomitas and Camden right away, that there had been a very bad crash". Officer McCartney relayed this information to Sergeant Mannagh, who testified that he immediately sent out a radio call to police cruiser car 4 and police motorcycles 3 and 7 to investigate the accident and instructed car 4 to call the station if an ambulance was needed. Sergeant Mannagh further testified that the regulations and directions of the Beverly Hills police department provided that such a call as he gave over the radio was to be treated by the officers receiving the message as an emergency call. The radio messages were received by Officer McBride, who was operating motorcycle 7, and by Officer James, who was operating police cruiser car 4. Both officers immediately directed their vehicles toward the intersection of Beverly Drive and Wilshire Boulevard, both sounding their sirens and both traveling, according to their testimony, at a speed of from 35 to 40 miles per hour. As they approached the intersection all visible traffic was standing still. As the automobile and the motorcycle collided in the intersection the two sirens blended so that the driver of neither vehicle could hear the siren on the other.

We are satisfied that there is ample evidence to sustain the court's finding that the officers were responding to an emergency call. The test for determining whether a publicly owned motor vehicle is at a given time an authorized emergency vehicle responding to an emergency call is not whether an emergency in fact exists at the time but rather whether the vehicle is then being used in responding to an emergency call. Whether the vehicle is being so used depends upon the nature of the call that is received and the situation as then presented to the mind of the driver. (*Head* v. *Wilson*, 36 Cal. App. (2d) 244 [97 Pac. (2d) 509].) From the informa-

tion received at police headquarters there had been a "very bad crash" which required investigation. Specific instructions were given by radio to "call the station if an ambulance is needed". The drivers of the police vehicles who received the radio message were informed that the matter was sufficiently serious to call for the dispatching of two motorcycles and a sedan to the scene. Under the rules of the police department the officers receiving the message were required to consider it as an emergency call and they undoubtedly treated it as such. The trial court under these circumstances was justified in finding that at the time of the accident they were responding to an emergency call.

A complete answer to appellants' contention that the evidence is insufficient to warrant the finding that the police vehicles were being driven with due respect to the safety of all persons using the highway is to be found in the decision in *Lucas* v. *City of Los Angeles,* 10 Cal. (2d) 476 [75 Pac. (2d) 599], a decision that is controlling in the present litigation. In the Lucas case the plaintiff was a guest passenger in an automobile as it was being driven across a street intersection on the right side of the street, at a lawful rate of speed and in response to a mechanical "Go" signal. In the middle of the intersection a police automobile, operated upon authorized emergency business, traveling at a high rate of speed and disregarding the traffic "Stop" signal, crashed into the automobile in which the plaintiff was riding. In reversing a judgment for the plaintiff the reviewing court ruled: "Since the vehicles are excluded from the restrictions of speed and right of way, negligence cannot be predicated on those elements if proper warning has been given. . . . Our conclusions from the foregoing are that when the operator of an emergency vehicle responding to an emergency call gives the statutory notice of his approach the employer is not liable for injuries to another, unless the operator has made an arbitrary exercise of these privileges. In such cases, speed, right of way, and all other 'rules of the road' are out of the picture; the only questions of fact, in so far as the public owner is concerned, are first, whether there was an emergency call within the terms of the statute; second, whether the statutory warning was given, and third, whether there was an arbitrary exercise of these privileges." In the case now under review the three questions of fact enumerated in the Lucas decision

have all been resolved in favor of defendant city by the trial court, which based its findings upon sufficient evidence. As above shown the police vehicles were responding to an emergency call and the statutory warning was properly given by the driver of each vehicle. It cannot be successfully contended that the finding of lack of the arbitrary exercise of the privilege accorded the police vehicles is without evidentiary support. In the Lucas case it is suggested that examples of the arbitrary exercise of the privileges accorded police vehicles would include instances in which the vehicle was returning from instead of going to the scene of an accident, or where it would be making only a routine run, or where the driver of the police vehicle has given the required warning but sees that another has not heard or heeded it. No circumstance was shown in the present case which would support a finding of the arbitrary exercise of the police car privileges.

Miss Coltman's conduct at the time of the accident was entirely free from negligence. While innocently standing upon the sidewalk her life was crushed out by a police vehicle which had collided with another police vehicle without the intervention of any other contributing agency. Yet under the prevailing statutes enacted by the legislature as interpreted by the highest court in California, the plaintiffs can obtain no redress whatever in the courts. Such a condition is much to be deplored. If justice is to be done to those receiving injuries under similar circumstances in the future the remedy must be provided by the legislature. The Supreme Court apparently held this view at the time of the Lucas decision, where it is said: "It has always been the law that, when a subject-matter is purely legislative, the courts will not decry the wisdom or policy of the enactment because they are not in accord with the views of the lawmaking body."

The judgment is affirmed.

McComb, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 28, 1940.

Houser, J., and Carter, J., voted for a hearing.