People of the State of Illinois, Appellee, v. Carl A. DeMarino and Noel D. Schiff, (Consolidated), Appellants.

Gen. No. M–50,268.

First District, Third Division.

June 16, 1966.

Schlaeger & Sklodowski, of Chicago, for appellants.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Separate complaints were filed on August 2, 1964, against each of the above defendants charging them with having violated section 48.1 of the Uniform Act Regulating Traffic on Highways (Ill Rev Stats 1963, c 95½, par 145.1), commonly described as "drag racing." Trial was held on October 15, 1964, at which time the court

found both defendants Carl A. DeMarino and Noel D. Schiff guilty of violations of the above act. Carl A. DeMarino was put on probation for six months, and Noel D. Schiff was sentenced to fifteen days in the County Jail. Notice of appeal on behalf of DeMarino was filed on October 20, 1964, and notice of appeal on behalf of Schiff was filed on October 29, 1964. Thereafter, on November 23, 1964, the trial judge by orders stayed the mittimus as to each defendant, ordered that the records in the two cases be consolidated for the purpose of appeal, and denied a motion in arrest of judgment.

The defendants raised the following points: (1) The complaints were insufficient in that they did not specify as to what drag racing is and failed to specify any acts of defendants which would adequately inform them of the offense for which they are accused; (2) the language of the drag racing statute is not set forth in the complaint with sufficient certainty and definiteness to advise the defendants of the specific criminal acts for which they are accused; (3) the defendants were not proven guilty beyond a reasonable doubt.

The first two points raised by the defendants, each of which goes to the question of sufficiency of the complaints, may be discussed together. As before mentioned, the notice of appeal on behalf of DeMarino was filed on October 20, 1964, and the notice of appeal on behalf of Schiff was filed on October 29, 1964. Thereafter, on November 23, 1964, the trial court entered orders denying a motion in arrest of judgment. After the filing of the notices of appeal in these cases, the court had no jurisdiction to enter such orders. The excerpts from record, including the report of proceedings at the trial, do not disclose that any motion in arrest of judgment either oral or written, had been made in the trial court. When an appeal is taken from a judgment or decree the control of the trial court over the case is suspended

until a disposition thereof on appeal. Nichols v. Bradley, 223 Ill App 377.

In American Smelting & Refining Co. v. The City of Chicago, 409 Ill 99, 98 NE2d 710, on page 102, the court said:

> "Upon due consideration we held that when the notice of appeal is filed in the circuit court the case proceeds in the court of review, not as a new case but as the continuation of one that was pending in the trial court, and the jurisdiction of the reviewing court to take the case attaches when the notice of appeal is filed in the trial court, and that we have no jurisdiction to consider any proceeding of the lower court after notice of appeal was filed and served. We further held the only questions we could consider on appeal were those existing when the notice of appeal was filed. We also held to the same effect in 162 East Ohio Street Hotel Corp. v. Lindheimer, 368 Ill 294, and Francke v. Eadie, 373 Ill 500. In view of the provisions of section 76 of the Civil Practice Act, the holdings in these cases would seem to be academic."

Defendants are now leaning upon orders of the trial court entered after the notices of appeal had been filed. It appears from this record that the obtaining of the orders of November 23, 1964, after the notices of appeal had been filed, was an afterthought, and since the court was without jurisdiction to enter such orders, the case stands before us as though no motions in arrest of judgment had been made. The objections which the defendants seek to raise to the complaints are not that the complaints did not charge an offense, but that the complaints did not with sufficient particularity charge an offense. Since no motions to quash or in arrest of judgment were filed or ruled upon in these proceedings

41

prior to the filing of the notices of appeal, the question of the sufficiency of these complaints cannot now be raised on appeal. People v. Berkowski, 385 Ill 392, 52 NE2d 710.

The defendants next contend that they were not proven guilty beyond a reasonable doubt. It will be necessary to now discuss the facts brought out at the trial.

On August 2, 1964, at about 7:30 or 7:45 p. m., the two automobiles driven by the two defendants pulled out from a hot dog stand into Milwaukee Avenue, where the traffic at that time was comparatively light. As they pulled out, Police Officer Dvorak, who was at Waukegan and Milwaukee, noticed the two vehicles make a left turn. The turn was made with excessive noise of the mufflers of both cars. The two cars were stopped by a red light at Touhy and Milwaukee. The officer was following in a car at a distance of about 200 feet when the light turned green. Between Touhy and Harts Road the two cars again accelerated to an excessive speed and were again stopped by a red light at Harts Road. The defendants' cars were being driven in a southerly direction on Milwaukee during all of this time. The officer, driving at a speed of 75 miles an hour, swung into the northbound lane in an effort to overtake the cars. One of the cars was in the inner lane and the other in the outer lane, side by side. The officer testified that he got about two or two and one-half blocks behind the cars, even though travelling at a speed of 75 miles an hour. Again, when the two cars were slowed by traffic at Albion and Milwaukee the police officer stopped them and told them to follow him back to the station. The officer also testified he clocked the speed of the defendants' cars up to 75 miles an hour and they were actually exceeding 75 miles an hour. Upon making the arrest the defendant Schiff said that next time he would get a faster car. Officer Dvorak also testified that the defendants were driving their vehicles in excess of the

posted speed limits. The defendants were charged with violating section 48.1 (UART) State of Illinois (Ill Rev Stats 1963, c 95½, par 145.1). This section reads as follows:

"Any person who, as an operator of a motor vehicle, is a participant in drag racing shall be confined in the county jail for not more than one year, and the operator's license of such person shall be revoked in the manner provided by Section 6–205 of the 'Illinois Motor Vehicle Law,' approved July 11, 1957, as heretofore or hereafter amended.

"For the purpose of this Section 'drag racing' means the act of 2 or more individuals competing or racing on any street or highway in this State in a situation in which one of the motor vehicles is beside or to the rear of a motor vehicle operated by a competing driver and the one driver attempts to prevent the competing driver from passing or overtaking him."

Defendant DeMarino testified in his own defense that he was travelling between 25 and 30 miles an hour and never pulled abreast of Schiff, and that he was three or four car lengths behind Schiff. He further testified that he did not know Schiff and that it was just a coincidence that they were driving alongside one another. He further testified that the posted speed along Milwaukee Avenue at that location was 35 miles per hour, and that he told the officer this was his first time.

Defendant Schiff testified that he was behind De Marino and that he passed DeMarino in the right-hand lane; that he drove his car 35 miles per hour and that he was not speeding because he already had enough tickets and didn't feel like doing any more speeding.

■ ■ The defendants contend, based upon the foregoing evidence, the State failed to prove a violation of

the aforementioned statute. They argue that the probative facts of drag racing would be excessive speed, improper lane usage, swerving, dodging, cutting off, tailgating, etc. With this statement we are not in accord. None of the foregoing appears in the statute with the possible exception of speed. The gist of the "drag racing" act is the competition of two or more individuals in motor vehicles racing on any street or highway in this State. It is not necessary that there be improper lane usage, swerving, dodging, cutting off, or tailgating. It is necessary under the statute only to show that two or more individuals were competing or racing on a street or highway in this State, and that one of the motor vehicles is to the side or the rear of another vehicle of a competing driver, and that the one driver attempts to prevent the competing one from passing or overtaking him. The evidence in this case showed that the defendants both accelerated their cars from a stopped position to excessive rates of speed and travelled side by side or in different lanes. One defendant testified that he passed the other defendant at one time while the other defendant testified that he was at all times three or four car lengths behind the car of the other defendant. To prevent a competing driver to pass or overtake the first driver can be accomplished by mere speed of the first driver. Proof of swerving or jockeying of the lead car is not essential under the statute. The purpose of the act is to protect the drivers of other cars and pedestrians in the use of streets or highways in this State. Racing of two or more cars on a public highway is far more dangerous than speeding by a single driver, and the legislature realizing this made the penalty for racing more severe than the penalty for speeding.

It was the function of the trial court to pass upon the credibility of the witnesses and that court in this case concluded that the testimony of the police officer was to be believed over that of the two defend-

44

ants. The trial judge having seen the witnesses and having observed their demeanor and their candor or lack of candor while testifying, was in a better position than we to determine credibility, and having decided to believe the testimony of the police officer, we will not disturb that finding. Further, we believe it was the only conclusion the trial court could have reached.

Both defendants testified that they did not know each other prior to this occurrence. In the case of State of Connecticut v. Dionne, 24 Conn Supp 59, 186 A2d 561, 564, the court said: "It is not necessary that there be some prior agreement or understanding or some prearrangement before there can be a race; there can be a race by total strangers on the spur of the moment."

In City of Madison v. Geier, 27 Wis2d 687, 135 NW 2d 761, the Wisconsin court, referring to a Connecticut case, said on page 764: "It was pointed out the idea of a race could be entirely subjective in the minds of each party and there may be a race in fact by reason of their competitive acts which could be determined by reasonable and logical inferences from observable circumstances."

On two occasions the defendants accelerated their cars to high speeds quickly. Neither one yielded to the other. The inference to be drawn from these facts were for the trial court, and unless they are unreasonable they should be accepted on appeal. We do not believe that the inferences properly drawn from the facts in this case were unreasonable. The judgments are therefore affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.