STATE of Iowa, Appellee,

v.

William VOLK, Appellant.

STATE of Iowa, Appellee,

v.

David POWER, Appellant.

Nos. 56341, 56342.

Supreme Court of Iowa.

July 31, 1974.

Nolan, Lucas & Nolan, Iowa City, for appellants.

Richard C. Turner, Atty. Gen., Thomas D. McGrane, Asst. Atty. Gen., Des Moines, and Carl J. Goetz, County Atty., John R. Sladek, Asst. County Atty., Iowa City, for appellee.

Submitted to MOORE, C. J., and MASON, RAWLINGS, REES and UHLENHOPP, JJ.

REES, Justice.

Defendants were informed against in separate actions in the police court of the City of Iowa City, for the crime of drag racing in violation of section 321.284, The Code, 1971. Both were tried on February 9, 1973, were adjudged guilty, and fined $100 each. Transcripts and appeal bonds were filed on February 28, 1973, with the Clerk of the District Court of Johnson County.

Pursuant to Sixth Judicial District rule of practice and procedure No. 3.5, the cases were assigned on March 7, 1973 for trial to the court on March 26, 1973. Subsequently, on March 9, 1973, defendants filed demands for a jury trial.

District rule 3.5 pertaining to criminal appeals provides:

"On the first regular court day after the 7th day of each month, the Clerk of Court in each county shall present to the Presiding Law Judge a list of all criminal cases appealed from lower courts during the preceding calendar month. The Judge shall then schedule each of said appeals for trial."

District rule 4.7 provides:

"The defendant in any criminal case appealed to this Court from a lower court shall be deemed to have waived his right to a trial by jury unless he files a written demand therefor with the Clerk of Court on or before the 7th day of the calendar month immediately following the calendar month in which the appeal is filed with the Clerk of Court."

Trial de novo was then had to the court in both cases. Both defendants were adjudged guilty of the offense charged, and on April 3, 1973 were sentenced to serve seven days in the county jail. They subsequently appealed to this court. The two cases are consolidated here for the purposes of appeal. We affirm.

Defendants state the following issues upon which they rely for reversal:

1) The conviction for "drag racing" under § 321.284 of the Code of Iowa should be reversed and judgment rendered for defendants when the State fails to show a defendant was competing in speed.

2) Defendants should be granted a new trial by jury where jury trials were denied them for failure to comply with the district court local rule of practice and procedure.

3) The imposition of the sentence of seven days in jail imposed by the district court on appeal was an increase of the sentence imposed by the police court, and the possibility of an increased sentence hindered defendants in their right of appeal for fear of judicial vindictiveness.

■ I. Section 321.284, The Code, 1971, which proscribes "drag racing", defines the offense as "one or more persons competing in speed in excess of the applicable speed limit in vehicles on the public streets or highways." The defendants contend the State failed to establish the fact defendants were "competing in speed".

The two arresting police officers (Officer Linn and Officer Sueppel) testified they observed the two automobiles driven by defendants traveling south on Dodge Street in Iowa City at a speed in excess of the posted speed limit, and that as the two autos approached the intersection of Bowery and Dodge Streets, one of the cars pulled in front of the other. At the Bowery Street intersection, Dodge Street changes from a one-way street to a two-way thoroughfare. Defendants contend that the evidence showing one automobile pulled in front of the other is not indicative of competition in speed, but rather the driver of the passing car was merely changing lanes to comply with the fact the street changed from a one- to a two-way street. Both officers testified the two cars were weaving in and out of traffic at high

rates of speed, and Officer Linn testified defendants were both traveling in excess of sixty miles per hour as they approached Bowery Street.

There are no Iowa cases expressly bearing upon the point here raised by defendants. Defendants and the State both cite and rely on the following cases from other jurisdictions: State v. Dionne, 24 Conn. Sup. 59, 186 A.2d 561 (1962); State v. Hart, 2 Conn.Cir. 27, 193 A.2d 903 (1963); State v. Hughes, 2 Conn.Cir. 75, 194 A.2d 722 (1963); City of Madison v. Geier, 27 Wis.2d 687, 135 N.W.2d 761 (1965); People v. DeMarino, 72 Ill.App.2d 38, 219 N.E.2d 132 (1966); and State v. Goodman, 8 Ohio App.2d 166, 221 N.E.2d 202 (1966).

In State v. Dionne, *supra*, the court found a "trial of speed" is the gist of the Connecticut drag racing statute. It would likewise seem to be the gist of § 321.284, The Code. The evidence in the instant case certainly tended to establish that defendants, just prior to their arrest, were engaging in a "trial of speed".

In State v. Hart, *supra*, the appellate division of the Circuit Court reversed a judgment of guilty in a factual situation dissimilar to that before us here. In *Hart* there was evidence the two automobiles in question were traveling abreast for the purpose of testing and calibrating the tachometer on the car of the defendant Hart with the speedometer on the car of a second defendant Levinson. The complaining witness testified that when he first observed the defendants stopped abreast during a ten-minute interval, he overheard a conversation between the defendants concerning revolutions per minute. Another complaining witness testified during said time that he overheard the defendants conversing about speedometers. Neither witness could testify whether the defendants were contesting for first position in contrast to the factual situation testified to by the arresting officers in the matter before us.

In State v. Hughes, *supra*, the arresting officer observed the parties charged with racing stopped at a traffic light side by side, and "gunning" their motors. The two defendants were not known to each other, nor was there any exchange of signals, hails, or horn-blowing between them, or any communication between them in any way. Defendants there argued that because there was no such exchange of signals or communication there could be no race; but in affirming, the court held there was no necessity for any prior agreement or understanding before there could be a race, and that a race between total strangers could take place on the spur of the moment, observing that the "idea" of a race could well be entirely subjective in the mind of each party. The appellate court affirmed the judgment of conviction.

In City of Madison v. Geier, *supra*, defendant was convicted in the county court of racing his automobile in violation of a city ordinance, but the judgment of conviction was reversed by the circuit court. In reversing the circuit court, the supreme court said:

"* * * Normally, to constitute a race there must be an acceptance or competitive response to the awareness of the challenge; such response may be the result of prearrangement or it may come into existence on the spur of the moment. There need be no prior formal or express agreement. In respect to automobiles the element of competition resulting from some understanding involving a challenge and a response may often reasonably be inferred from the speeds and the relative positions of the cars." (135 N.W.2d at page 764).

In People v. DeMarino, *supra*, the court said, at pages 135–136 of 219 N.E.2d:

"The defendants contend, * * * the State failed to prove a violation of the aforementioned statute. They argue that the probative facts of drag racing would be excessive speed, improper lane

usage, swerving, dodging, cutting off, tail gating, etc. With this statement we are not in accord. None of the foregoing appears in the statute with the possible exception of speed. The gist of the 'drag racing' act is the competition of two or more individuals in motor vehicles racing on any street or highway in this State. It is not necessary that there be improper lane usage, swerving, dodging, cutting off, or tail gating. It is necessary under the statute only to show that two or more individuals were competing or racing on a street or highway in this State, and that one of the motor vehicles is to the side or the rear of another vehicle of a competing driver, and that the one driver attempts to prevent the competing one from passing or overtaking him. The evidence in this case showed that the defendants both accelerated their cars from a stop position to excessive rates of speed and traveled side by side or in different lanes. * * * The purpose of the act is to protect the drivers of other cars and pedestrians in the use of streets or highways in this State. Racing of two or more cars on a public highway is far more dangerous than speeding by a single driver, and the legislature realizing this made the penalty for racing more severe than the penalty for speeding."

In State v. Goodman, *supra*, the appellate court reversed the conviction of the defendant on a holding that the evidence was insufficient to establish beyond a reasonable doubt that defendant was engaged in drag racing rather than in overtaking and passing another vehicle. However, at page 207 of 221 N.E.2d, the court said:

"In our opinion it was questionable whether the state had submitted evidence to sustain a conviction of drag racing, at the conclusion of its case. The alleged drag racing took place on the straightaway. According to the police officer's testimony, two vehicles were operating side by side at speeds in excess of the speed limit. These facts standing alone

would * * * establish a prima facie case against plaintiff."

The record in this case clearly supports a conviction of drag racing under § 321.-284, The Code. Defendants were obviously "competing in speed in excess of the applicable speed limit in vehicles on the public streets or highways", as is proscribed by § 321.284. The element of competition is established by the evidence that both drivers rapidly accelerated their vehicles and by the testimony that one cut in front of the other at high speed.

■ II. Defendants contend the overruling of their motion for jury trial, based on their failure to comply with rule 4.7 of the Sixth Judicial District Rules of Practice and Procedure, was error and unlawfully deprived them of their constitutional right of trial by jury.

Rule 4.7 is set out in full above. It was adopted by the judges of the Sixth Judicial District in conformity with authority for district courts to make rules governing their internal procedure and practice, as provided in rule 372, Rules of Civil Procedure.

Defendants perfected their appeal from the police court to the district court in February 1973. Their demand for a jury trial was filed March 9, 1973, two days after such demand was permitted under rule 4.7 above. The court, in ruling on the motion for jury trial, expressly found the defendants had waived their right to demand a trial by jury by their failure to make timely demand for same.

Defendants contend district rule 4.7, when viewed in the light of § 762.15, § 367.8 and § 762.48, The Code, 1971, is invalid. It is to be remembered this case was disposed of prior to July 1, 1973 when the unified trial court came into being.

Section 762.15, The Code, 1971 provides:

"Before the justice has heard any testimony upon the trial, the defendant may demand a jury."

Section 762.48 provides in pertinent part:

"The cause shall stand for trial anew in the district court in the same manner that it should have been tried before the justice * * * ."

Section 367.8, The Code, 1971, which prescribes the procedure on appeal from a mayor's or police court, provides that proceedings in such courts should be heard by the court without a jury except on appeal. Both §§ 367.8 and 762.48 were repealed by the Acts of the 64th General Assembly in 1972, effective July 1, 1973. Section 762.-15, *supra*, was amended by Acts of the 64th General Assembly to read as follows:

"Either party in a criminal action shall be entitled to jury trial by filing with the magistrate a written jury demand within ten days after the information or complaint is filed, or at least two days before the trial if the action is tried before ten days elapses. Failure to make a jury demand in the manner prescribed herein constitutes a waiver of jury. If demand is made, the action shall be tried by a jury of six members."

■ The right to a jury trial may be waived by a defendant charged with the commission of a nonindictable or petty offense in Iowa. State v. Baker, 203 N.W. 2d 795, 797 (Iowa 1973); State v. Berg, 237 Iowa 356, 360–363, 21 N.W.2d 777, 779–781. In State v. Baker, *supra*, the court held the defendant waived his right to a jury trial by failing to demand one before evidence was taken in accordance with the provisions of § 762.15. This might be construed to imply that a demand for jury trial could be made at any time before evidence was taken.

We are dealing in this instance with a nonindictable misdemeanor. In State v. Ill, 74 Iowa 441, 38 N.W. 143, this court held that in the trial in district court upon appeal from a conviction for a nonindictable offense, of which the district court did not have original jurisdiction, the defendant could properly waive a trial by jury.

In State v. Berg, *supra*, the court upheld the validity of § 602.39, The Code, which provided that demand for jury in municipal courts could be made as provided by rule of court, and if not so made the cause should be tried by the court. We note in passing § 602.39 was repealed by the Acts of the 64th General Assembly. In *Berg* the municipal court in which the case was originally tried had adopted a three-day jury demand rule which the defendant had failed to comply with, and we affirmed the action of the trial court in refusing to grant a jury trial for failure to comply with the rule.

Analogizing the district court's rule 4.7 with State v. Berg and the other citations above set out, we conclude the district court judge in the matter here was acting within the limits of proper discretion and with due authority to refuse to grant a jury trial to the defendants in this case when request therefor was belatedly made. We are not concerned here with a question of a right to a jury trial, but the waiver of that right by failure to comply with the district rule.

■ III. In the disposition of the two cases before us here in the trial court, defendants were each fined $100. On appeal to the district court defendants were each sentenced to jail for a period of seven days.

Defendants now insist the seven-day jail sentences were greater than the sentence to pay a $100 fine imposed in the police court, and that the rights of the defendants under the due process clause of Amendment 14 of the United States Constitution had been violated.

Defendants cite and rely for support of their argument in connection with this assignment on North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. In *Pearce* the defendant had been convict-

ed in a North Carolina court for assault with intent to commit rape and sentenced to prison for a term of from 12 to 15 years. Several years later he initiated a state postconviction proceedings which culminated in the reversal of his conviction by the Supreme Court of North Carolina on the ground that an involuntary confession had been unconstitutionally admitted in evidence against him. He was retried, convicted and sentenced by the trial judge to an eight-year prison term which, when added to the time Pearce had already spent in prison, amounted to a longer total sentence than that originally imposed. Pearce then sought habeas corpus in the United States District Court which, upon authority of Patton v. North Carolina, 381 F.2d 636, cert. denied, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871, held that the longer sentence imposed upon retrial was "unconstitutional and void".

In argument defendants also make reference to Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584, criticize the Colten decision, and seek to distinguish it from *Pearce, supra.* The defendant in *Colten* who had been charged under a Kentucky disorderly conduct statute was fined $10 and exercised his right of appeal to a superior court from the Quarterly Court of Fayette County, Kentucky, a court of limited criminal jurisdiction. Review of the *Colten* matter in the Superior Court was de novo, and on the de novo review the Superior Court imposed a fine of $50. The Supreme Court in *Colten* observed that the only real distinction between *Pearce* and *Colten* was the source of authority for the new trial; in *Pearce* the new trial was granted after an appellate court determination that the decision of the trial court could not stand, whereas, in *Colten* the authority for the trial de novo review came directly from a statutory provision.

An excellent exposition on the *Colten-Pearce* cases appears in 51 North Carolina Law Review 882.

This court has spoken to this very question in City of Cedar Rapids v. Klees, 201 N.W.2d 920, 921 (1972). In *Klees* the defendant was charged in the Municipal Court of Cedar Rapids with driving a motorcycle 60 miles per hour in a 25-mile-per-hour zone, a nonindictable offense under a city ordinance. He pleaded guilty and was sentenced to pay a fine of $25, or on nonpayment to be incarcerated in jail for seven days. On appeal to the district court, and after trial de novo that court found him guilty, and based on the evidence before it sentenced defendant to five days in jail with provision for release under the work release statute. He appealed to this court, contending his alleged harsher sentence in district court is a violation of his constitutional rights. This court followed *Colten, supra,* and affirmed.

■ In any event, we observe that § 321.284, The Code, 1971, provides for a punishment of $100 fine or 30 days in jail. If we assume the alternatives to be equivalent, the seven-day sentence imposed upon defendant by the district court might be considered a lesser sentence than the $100 fine imposed by the police court.

In sum, we conclude there was sufficient evidence to support the finding that the defendants were "competing in speed" in violation of § 321.284, The Code, 1971. We also conclude defendants waived their right to a jury trial by failing to comply with the Sixth District rule 4.7. We conclude further, in the light of *Klees, supra,* that the imposition of a different sentence on an appeal de novo is permissible.

Finding no error, we affirm the trial court.

Affirmed.