CITY OF DES MOINES, Appellee,

v.

Lloyd HUFF, Appellant.

No. 56511.

Supreme Court of Iowa.

Sept. 17, 1975.

Mike Wilson, Des Moines, for appellant.

Philip T. Riley, Des Moines, Corp. Counsel, and Tela L. Weber, Asst. City Atty., Des Moines, for appellee.

McCORMICK, Justice.

Defendant appeals his conviction and sentence for speeding in violation of a Des Moines ordinance. Trial was to the court. Defendant stipulated he was at the time of his arrest operating a motor vehicle 40 miles per hour in a 25 mile per hour zone. He contended the speed limit was not applicable to him because he was operating an emergency vehicle in response to an emergency call. The trial court found him guilty of speeding and fined him $15. Defendant alleges he should have been acquitted because he established his defense as a matter of law. We find he did not and affirm the trial court.

In a criminal case tried to the court, as in a civil case tried to the court at law, the court's verdict is like a jury verdict. Upon review of the sufficiency of evidence to support the verdict, the evidence is viewed in its light most favorable to the verdict, and we accept as established all reasonable inferences tending to support it. See, e. g., *State v. Volk*, 220 N.W.2d 607 (Iowa 1974). In review of any case tried to the court at law, findings of the trial court are to be broadly and liberally construed, rather than narrowly or technically, and in case of ambiguity, they will be construed to uphold, rather than defeat, the judgment. Of course, this does not preclude inquiry into whether the trial court applied errone-

ous rules of law which materially affected its decision. We are not bound by trial court determinations of law. *Farmers Insurance Group v. Merryweather*, 214 N.W.2d 184, 186–187 (Iowa 1974); *Frantz v. Knights of Columbus*, 205 N.W.2d 705, 708 (Iowa 1973). When, as here, the court makes only a general finding, every finding of fact necessary to support the decision appealed from will be presumed to have been made. 5 Am.Jur.2d Appeal and Error § 840 at 284. In addition, any error alleged by the appealing party must appear affirmatively in the record. *State v. Wilmoth*, 63 Iowa 380, 382, 19 N.W. 249, 250 (1884) ("Errors must be shown with sufficient clearness, and presumptions must be exercised supporting the rulings of the court.").

This charge arose from an incident which occurred May 14, 1972. Defendant, a state conservation commission officer, acknowledged at trial that he was driving a commission vehicle 15 miles per hour above the posted speed limit on a Des Moines street when he was stopped by a police officer operating a radar unit and arrested for speeding. He said his vehicle was equipped with red lights and siren which he admitted were not in use at the time. The City admitted no other vehicles were being operated in the same block, and no pedestrians were in or near the street.

Defendant's theory of defense was that the City's speed ordinance did not apply to him because he was operating an authorized emergency vehicle in response to an emergency call within the terms of § 321.296, The Code, which provides in part:

> "The speed limitations set forth in this chapter shall not apply to authorized emergency vehicles when responding to emergency calls and the drivers thereof sound audible signal by bell, siren, or exhaust whistle."

He maintained he was excused from sounding an audible signal because no other drivers or pedestrians were near. He relied on § 321.433, The Code, which provides in part:

" *  *  * Any authorized emergency vehicle may be equipped with a siren, whistle, or bell * * *, but such siren shall not be used except when such vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law, in which said latter events the driver of such vehicle shall sound said siren when necessary to warn pedestrians and other drivers of the approach thereof."

In order to establish this defense, it was first necessary for defendant to prove he was driving an authorized emergency vehicle in response to an emergency call at the time involved. If he proved he was, the trial court would then have to determine whether defendant was excused from sounding his siren. It seeking to uphold the conviction, the City contends, alternatively, that defendant did not prove he was responding to an emergency call and that, in any event, the exemption provision of § 321.296 was inapplicable because he was not sounding an audible signal.

The arresting officer testified that his vehicle was parked facing north on 34th Street in Des Moines just north of Clark in the late morning of May 14, 1972. He said he could see a block and a half to the south to the intersection of 34th Street and Forest Avenue through his rearview mirror. He asserted he saw defendant turn his motor vehicle onto 34th Street from Forest and head north, and he did not at any time observe a red light or hear a siren as he watched the vehicle. He stopped defendant's vehicle and arrested him for speeding. The officer testified defendant told him he was on an emergency trip, responding to a call about ducks being shot out of season north of the city.

Defendant testified he was on regular patrol duty on the day involved. He said he called his home about 11:00 a. m. and was told by his wife that she had received a call a few minutes earlier reporting duck shooting at a lake north of Des Moines. Duck hunting was out of season. Defendant testified he was on his way to the lake, about three miles from the scene of his arrest, at the time he was stopped. He asserted he had used his siren and light on streets where there was traffic and at intersections.

Defendant's wife testified she had received an anonymous call reporting duck shooting at the lake about five minutes before defendant called. She said the caller told her that if defendant got to the lake real soon he might be able to catch the shooters, and she had related this to her husband. Upon cross-examination, she was asked if she had not testified in municipal court that ten to fifteen minutes passed between the anonymous call and her husband's call. She said, "It wasn't very long I am sure."

Defendant acknowledged he spent ten to fifteen minutes talking to the officer after his arrest. He said he then proceeded to the scene of the reported duck shooting, but found no one there.

The defense called a state conservation officer supervisor in an effort to show the commission had instructed its officers they did not need to sound an audible signal when speeding in response to emergency calls except when necessary to warn pedestrians and other drivers of their approach. Counsel for the City objected on the ground the defense inquiry called for an interpretation of law which was the province of the court, not the commission. In ruling on the objection, the trial court said:

"The court isn't bound by the instructions given [by] the conservation commission. I think it is relatively irrelevant. The question is whether as a matter of law he was required to sound his siren if he was speeding.

 *  *  *  *  *  *

"And what his instructions were, if they instructed him not to sound his siren, that would not excuse a violation of the law. * * *."

After the parties presented their evidence and their arguments, the trial court announced a verdict of guilty and fined defendant. The court made no specific findings of fact or law.

While fixing defendant's appeal bond, the trial court said:

"Make the bond a $25.00 bond and you might want to appeal it and I think it might be a good idea. This is the way I read the law and I have to enforce it as I read it.

\* \* \* \* \* \*

" \* \* \* I would welcome an appeal in this case because I am very reluctant in my decision here, but I do feel that I have to follow the statute."

Defendant raises only one issue on this appeal, as follows:

"That an Iowa Conservation Commission vehicle should be considered an 'emergency vehicle' as defined in § 321.1, [The Code], and since the vehicle so qualifies, the vehicle is entitled to speed in response to an emergency call using the sirens and bells only when required to warn pedestrians and other drivers of the approach thereof."

One problem with this statement is that it does not assign any specific ruling or rulings of the trial court as error. We pass the question of the sufficiency of this statement to constitute an assignment of error. See *State v. Buttolph*, 204 N.W.2d 824, 825 (Iowa 1973), cert. denied, 414 U.S. 857, 94 S.Ct. 163, 38 L.Ed.2d 107. The statement, when read with defendant's supporting argument, appears to be a contention defendant established his defense as a matter of law and the trial court must have misinterpreted the law in failing to acquit defendant.

■ We assume, without deciding, that defendant's interpretation of the law is correct. Nevertheless, review of the trial transcript does not disclose any ruling by the trial court on either of the points of law urged in defendant's statement. Defend-

ant cannot accuse the trial court of misinterpreting the law when he cannot show what the court's interpretation was. The remarks of the court in ruling upon the City's objection to testimony of defendant's supervisor and in fixing appeal bond cannot be bootstrapped into a ruling by the court that § 321.296, The Code, requires an emergency vehicle when speeding in response to an emergency call to sound an audible signal in all events, not only when necessary to warn pedestrians or other vehicles of its approach. In context, the first remark of the court was an expression of agreement with the City that the matter of statutory interpretation was for the court, uninfluenced by conservation commission instructions to its officers. The second remark of the court does not disclose what interpretation the court made of any of the several statutes involved in the case, much less § 321.296. We cannot presume the court's general verdict of guilty was based upon an erroneous view of the law. The presumption is to the contrary. *Farmers Insurance Group v. Merryweather; State v. Wilmoth,* supra. Defendant has not met his burden to show the trial court misinterpreted the law.

In arguing he established his defense as a matter of law, defendant does not address the second ground of the City's resistance to his defense, the issue whether he was in fact responding to an emergency call at the time of his arrest. The exception afforded by § 321.296 is applicable only when the officer is responding to an emergency. See § 321.232, The Code ("when such vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law").

■ Defendant's evidence in support of his contention he was responding to an emergency call did not establish that fact as a matter of law. An "emergency call" exists when, upon receipt of a message, the responding officer truly believes an emergency exists and has reasonable grounds for that belief. In the ordinary case, this issue

is for the trier of fact. *Coltman v. City of Beverly Hills*, 40 Cal.App.2d 570, 105 P.2d 153 (1940); cf. *Bravata v. Russo*, 41 Misc.2d 376, 245 N.Y.S.2d 702 (1963). We believe the issue was for the court as trier of fact in this case.

Three questions of fact inhere in resolution of the issue here. Did defendant receive the alleged message? If so, did he actually believe an emergency existed? And, if he did so believe, did he have reasonable grounds for such belief?

The trial court was not bound to believe the testimony of defendant and his wife regarding the alleged message. Credibility issues are for the trier of fact. The trial court made no finding regarding credibility in this case. No specific findings were made. The court, like a jury would do, simply entered a general verdict of guilty.

■ In addition, assuming the message was given as testified, the trial court was not obliged to believe defendant's assertion that he actually believed there was an emergency. His wife had received an anonymous telephone call at home regarding a claim that ducks were being shot out of season. She did not treat the message as an emergency. She did not immediately notify the police or any agency or person who could reach her husband or who could otherwise respond to the call. She simply waited, perhaps as long as fifteen minutes, until defendant called her by telephone. Although he argues he believed an emergency existed, defendant's concern was not great enough to prevent him from spending another ten to fifteen minutes discussing his speeding ticket with the arresting officer. He took no steps to cause the call to be answered by anyone else. The trier of fact may well have found this casual handling of the purported emergency call belied defendant's assertion that he believed an emergency existed.

Similarly, it was for the trier of fact to say whether defendant had reasonable grounds to believe an emergency existed. The court may have found the anonymous telephone call regarding the alleged threat to the lives of certain ducks was insufficient basis for defendant to believe he should expose the public to the dangers involved in operating his motor vehicle in violation of the standards applicable to ordinary motorists.

Defendant did not establish as a matter of law that he was responding to an emergency call at the time of his arrest. He did not establish his defense to the speeding charge as a matter of law. By rendering a general verdict of guilty, the trial court must be deemed to have resolved essential fact issues against defendant.

No error of law has been shown. No reversible error appears.

Affirmed.

MOORE, C. J., and MASON, LeGRAND and UHLENHOPP, JJ., concur.

RAWLINGS, REES, REYNOLDSON and HARRIS, JJ., dissent.

RAWLINGS, Justice (dissenting).

As I cannot interpret the record below as the majority does, I respectfully dissent.

I. The transcript of evidence in district court comprises less than 17 pages. Upon reading it I am convinced the issue fought out below was legal, not factual, and the court erroneously adopted the State's theory defendant was guilty because at the time and place in question he was not operating the siren on his emergency vehicle.

The City presented one witness, the Des Moines policeman whose direct and cross-examination covers two and one-half transcript pages. On direct the officer testified he stopped defendant's vehicle while operating a "radar set-up," defendant "stated he was on an emergency trip north of town, someone shooting ducks out of season," the officer observed no red lights and heard no siren, and defendant said "he didn't need them." On cross-examination the officer testified there was no north or south-bound traffic other than defendant.

The State's total cross-examination of defendant was one question:

"Q. Mr. Huff, at the time that you were going through the radar beam in the vicinity of the violation, did you sound any audible signal by bell, siren or exhaust whistle? A. No."

Almost three pages of transcript are devoted to the testimony and matters relating to the testimony of defendant's last witness, a State conservation officer supervisor. When he was asked about instructions the commission gave to conservation officers concerning the use of sirens and red lights the State objected,

"MR. WYNN: Your honor, I am going to object. This is invading the province of the Court. *The Court is going to judge the law.*" (Emphasis supplied.)

It was at this point trial court observed, "The question is whether as a matter of law he was required to sound his siren if he was speeding," followed by the comment, "and what his instructions were, if they instructed him not to sound his siren, that would not excuse a violation of the law."

The supervisor was permitted to answer the question subject to the objection. There was no cross-examination. The evidence closed. The transcript discloses the following record was then made:

"(Arguments made to the Court by Counsel.)

THE COURT: Defendant is found guilty of the offense and he is fined $15.00 or three days in jail and judgment is entered in favor of the defendant [sic].

MR. DAVIS: Within what period of time, Your Honor, do we have to pay that? We may wish to appeal this matter quite frankly.

THE COURT: Yes, you might want to appeal it and put your bond up or whatever.

MR. DAVIS: Do you set the bond, Your Honor, and, if so, we would ask you that you indicate.

THE COURT: The bond will be $25.00. That is enough.

MR. WYNN: I have no objections, Your Honor.

THE COURT: Make the bond a $25.00 bond and you might want to appeal it and I think it might be a good idea. *That is the way I read the law and I have to enforce it as I read it.*

MR. DAVIS: For the purposes of a final determination, it will be under consideration.

THE COURT: Well, put up your bond and do what you think is best on it. I would welcome an appeal in this case, *because I am very reluctant in my decision here, but I do feel that I have to follow the statute.*

(Record closed.)" (Emphasis supplied.)

A trial judge who concluded a peace officer lied under oath about the nature of his trip would not be "very reluctant in * * [his] decision." If he had resolved a factual issue against defendant he would not have stated "The question is whether as a matter of law he [defendant] was required to sound his siren if he was speeding." Neither would the judge have any reason to state on the record "That is the way I read the law" and "I do feel that I have to follow the statute."

If we are to indulge in presumptions we should presume a competent trial judge turning a decision on factual grounds would make a finding on those facts. See *State v. Baker*, 203 N.W.2d 795, 796 (Iowa 1973) ("This matter was tried to the court without a jury. The trial judge filed detailed findings of fact and conclusions of law"); compare rule 179(a), Rules of Civil Procedure ("The court trying an issue of fact without a jury * * * shall find the facts in writing * * *. No request for findings is necessary for purposes of review.").

The total transcript plainly demonstrates the fighting issue was whether applicable statutes required defendant to activate his

siren at the time and place in question, and in total context, clearly indicates trial court's decision turned on an erroneous statutory interpretation, not a determination there was no emergency.

In the face of this record, the majority opinion, citing unrelated rules, creates a presumption trial court not only decided the law issue in favor of defendant, but the fact issue in favor of the State.

We are not reviewing an appeal in which defendant requests a review of the sufficiency of the evidence to support the verdict, on which point the majority inexplicably cites *State v. Volk*, 220 N.W.2d 607 (Iowa 1974). And as trial court made *no* fact findings, we are not confronted with an appeal logically invoking the concept that "findings of the trial court are to be broadly and liberally construed * * * to uphold * * * the judgment," for which proposition the majority cites *Farmers Insurance Group v. Merryweather*, 214 N.W.2d 184 (Iowa 1974) and *Frantz v. Knights of Columbus*, 205 N.W.2d 705 (Iowa 1973), where in each instance trial court *did* file written findings.

The State does not assert, as does the majority opinion, that defendant failed to pin-point the trial court error, or that in rendering judgment trial court did not adopt the State's interpretation of the emergency vehicle statutes. The State's brief implicitly concedes trial court decided the law issue adversely to defendant. While its vitality has been whittled away, we have not yet so completely ignored the statutory direction that in consideration of a criminal appeal we are to " * * * examine the record, without regard to technical errors or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands * * *." Section 793.18, The Code; see *State v. Cusick*, 248 Iowa 1168, 1170, 84 N.W.2d 554, 555 (1957).

We have long recognized a conclusive presumption the jury will follow the instructions of the court, *State v. Rice*, 56 Iowa 431, 433, 9 N.W. 343, 344 (1881), and we further presume prejudice where the court's jury instructions are erroneous. *Heldenbrand v. Executive Council of Iowa*, 218 N.W.2d 628, 637 (Iowa 1974); *State v. Miner*, 213 Iowa 193, 195, 238 N.W. 594, 595 (1931). In such event, we remand for new trial. *Id.*

Where the court proceeds under an erroneous view of the law in a case tried to the judge we should do no less. In this situation prejudice is also presumed where the decision does not disclose its absence:

"[W]hile we are bound by the lower court's findings of fact, if it applied erroneous rules of law in arriving at its decision, unless absence of prejudice appears therefrom, we must interfere. It is as though an erroneous instruction had been given to a jury." *Houlahan v. Brockmeier*, 258 Iowa 1197, 1204, 141 N.W.2d 545, 549 (1966), quoting *In Re Lundvall's Estate*, 242 Iowa 430, 435, 46 N.W.2d 535, 538 (1951).

We should remand for new trial under the proper statutory interpretation.

II. Of course the disposition I would make of this appeal requires resolution of the real issue in the case: whether defendant's failure to give an emergency vehicle warning, by siren, at the time and place in question nullified any statutory speed law exemption he could have otherwise effectively invoked.

There is no dispute defendant was a peace officer. See §§ 107.13, 748.3(6), 748.4, 755.3, 755.4. Nor does State deny he was driving a State owned automobile equipped with emergency lights and siren and meeting the statutory definition of "authorized emergency vehicle." Section 321.1(26), The Code.

But at this point some other statutory enactments come into play.

Section 321.230 provides:

"The provisions of this chapter [Motor Vehicles and Law of Road] applicable to the drivers of vehicles upon the highways

shall apply to the drivers of all vehicles owned or operated by * * * the state, subject to such specific exceptions as are set forth in this chapter with reference to authorized emergency vehicles."

Section 321.231 declares:

"The driver of any authorized emergency vehicle when responding to an emergency call upon approaching a red or stop signal or any stop sign shall slow down as necessary for safety but may proceed cautiously past such red or stop sign or signal. At other times drivers of authorized emergency vehicles shall stop in obedience to a stop sign or signal."

Section 321.296 says:

"The speed limitations set forth in this chapter shall not apply to authorized emergency vehicles when responding to emergency calls *and the drivers thereof sound audible signal by * * * siren * * *.*" (Emphasis supplied.)

Section 321.433 states:

"No vehicle shall be equipped with * * * any siren * * *, except as otherwise permitted in this section. * * Any authorized emergency vehicle may be equipped with a siren, * * * *but such siren shall not be used except when such vehicle is operated in response to an emergency call * * * in which said * * * [event] the driver of such vehicle shall sound said siren when necessary to warn pedestrians and other drivers of the approach thereof.*" (Emphasis supplied.)

It is at once evident Code §§ 321.231, 321.232, 321.296 and 321.433, quoted above, are in pari materia. They must therefore be construed together and harmonized if possible. See *State v. Bartz*, 224 N.W.2d 632, 635 (Iowa 1974); *Baird v. Webster City*, 256 Iowa 1097, 1113–1114, 130 N.W.2d 432, 441–442 (1964); 2A Sutherland, Statutory Construction, §§ 51.03, 51.05 (Sands 4th ed. 1973); 73 Am.Jur.2d, Statutes, §§ 187–189; 82 C.J.S. Statutes § 366.

At this juncture, recognition should be accorded to another established standard of statutory construction. R.C.P. 344(f)(13) says: "In construing statutes the courts search for the legislative intent as shown by what the legislature said, rather than what it should or might have said."

To the same effect is this statement in *City of Cedar Rapids v. Moses*, 223 N.W.2d 263, 268 (Iowa 1974):

"The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as shown by what the legislature has said, rather than what it should or might have said. A court may not, under the guise of construction, extend, enlarge or otherwise change the terms of a statute."

See also *Bergeson v. Pesch*, 254 Iowa 223, 227–228, 117 N.W.2d 431, 433–434 (1962).

When, by Code § 321.433, quoted above, the General Assembly provided an emergency vehicle siren shall be sounded "when necessary to warn pedestrians and other drivers of the approach thereof" the manifest purpose was to protect against injury and damage to all persons then on, entering, or in proximity to the traveled highway. See *Wetz v. Thorpe*, 215 N.W.2d 350, 353–354 (Iowa 1974); *Sundin v. Hughes*, 107 Ill.App.2d 195, 202–203, 246 N.E.2d 100, 105 (1969); *Oklahoma Ry. Co. v. Thomas*, 63 Okl. 219, 220–221, 164 P. 120, 121–122 (1917).

Furthermore, the qualifying term "when necessary" found in § 321.433 must mean at such time or times as existing circumstances make the sounding of a siren essential for the protection of persons and property. See *Hobby v. Hodges*, 215 F.2d 754, 758–759 (10th Cir. 1954); cf. *Christensen v. Kelley*, 257 Iowa 1320, 1330–1331, 135 N.W.2d 510, 516 (1965).

In other words the legislature did not intend the sounding of a siren should be a condition precedent to exemption of an emergency vehicle operator for exceeding any given speed limit and § 321.296 cannot

be so construed. Surely, if the General Assembly had intended to say the siren of an emergency vehicle must be sounded at all times while responding to an emergency call it could easily have so stated. But this it did not do and I cannot read such words or meaning into any statutory enactment here involved.

*Reed v. Simpson,* 189 P.2d 776 (Cal.Ct. App.1948), rev'd on other grounds, 32 Cal.2d 444, 196 P.2d 895 (1948), dealt with a statute which, like § 321.433 quoted *supra,* required the sounding of an emergency vehicle siren "as may be reasonably necessary."

With regard thereto the court observed, 189 P.2d at 778–779:

"The legislature could not have intended that before he is to be exempt an operator of such emergency vehicle must in every situation proceed along a boulevard screeching to the terror of the inhabitants although the violator he pursues may be miles away and there is only one motorist on the highway of his route. The construction adopted by the trial court operates a forfeiture of the exemption as a matter of law, whereas it was intended that the officer might determine when it is 'reasonably necessary.' Therefore it was a fact to be determined by the jury whether the sounding of the siren was reasonably necessary. *Isaacs v. City and County of San Francisco,* 73 Cal. App.2d 621, 626, 167 P.2d 221."

The trial transcript in the instant case reveals without dispute, there was no vehicular traffic on or anywhere near the roadway within the arrest vicinity. Furthermore, no evidence was presented which disclosed any pedestrian could have been directly or indirectly affected by presence of the emergency vehicle.

It is therefore evident that at the time and place here concerned defendant was not, under conditions then existing, required to have the siren on said emergency vehicle in operation as a condition to his immunity from arrest for speeding.

A contrary holding would mean that peace officers desiring to approach the scene of a reported crime without advance notice, or wishing to remain undetected while pursuing fleeing suspected or actual violators of the law would be unreasonably hampered in effecting an arrest.

Finally, I am satisfied Code § 321.433, as above construed, comports with §§ 321.230, 321.231, 321.296, all quoted *supra.*

Trial court was in error in adopting the State's contention the emergency vehicle statutes required defendant to have his siren in operation whenever his vehicle exceeded the posted speed limit.

If the case were remanded trial court might find the facts as hypothecated in the majority's *de novo*-type conclusions. But from uncontroverted evidence in this trial it seems apparent defendant's vehicle was not radio-equipped. Defendant called home for messages and the police and highway patrol telephoned there concerning violations. Mrs. Huff's delay in relaying the report to defendant was therefore understandable, and of course her judgment whether the report in question constituted an emergency was irrelevant. As majority indicates, it is the responding officer's belief which, when the factual issues are ultimately reached, will become relevant. Nor is it surprising that a peace officer who thought he was operating within the emergency vehicle statutes would, when arrested by another peace officer, argue about the law while his summons was being written. But we have no indication trial court considered it necessary to reach any of these factors.

To me the record is clear trial court's disposition of this case welled out of an erroneous interpretation of the law. I would reverse and remand for new trial.

REES, REYNOLDSON and HARRIS, JJ., join in this dissent.