STATE of Iowa, Plaintiff-Appellee,

v.

Robert Wallis PRICE,
Defendant-Appellant.

No. 84–915.

Court of Appeals of Iowa.

Jan. 29, 1985.

Patrick Grady, Asst. Appellate Defender, Des Moines, for defendant-appellant.

Thomas J. Miller, Atty. Gen. and Steven K. Hansen, Asst. Atty. Gen., for plaintiff-appellee.

Heard by OXBERGER, C.J., and SNELL and SCHLEGEL, JJ.

SNELL, Judge.

The defendant, Robert Price, was accused of abducting Susan Whelan, a girl whom he had formerly dated, on February 11, 1984, and of shooting at her after she fled from his car. Price and Whelan had

dated from December 1982 till the summer of 1983 while Whelan was a student at Loras College in Dubuque. Following her sophomore year at Loras, Whelan transferred to Loyola College in Chicago. During the fall of 1983, Whelan returned to Loras for homecoming weekend and during that visit she informed Price that she no longer wanted to date him. Price went into a deep depression after receiving this news. He tried to kill himself on four occasions saying that he could not live without Whelan. During the period from October 1983, when Whelan had broken off relations, until the day of the shooting in February 1984, Price contacted Whelan on various occasions to try to talk to her. Price testified that he persisted in his attempts to contact Whelan because he could not understand why she broke up with him.

In February 1984, Whelan returned to Dubuque to visit and Price saw her at a dance at the Knights of Columbus Hall. Price asked if they could talk and Whelan said "sure." However, later, when Price went to find Whelan, he discovered that she had already left. Price drove around Dubuque looking for Whelan. He learned that she was staying with friends but, when he tried to call her, he was told she did not want to talk with him. Price ultimately ended up at the home of a friend, Mike Schrieber. Schrieber testified that Price was quite depressed over the fact that Whelan would not speak with him and that Price could not understand why Whelan broke up with him. Price showed Schrieber the gun. Schrieber tried, unsuccessfully, to tell Price that the gun would not solve the problem and to convince Price to give him the gun. Price refused and left. He went to the apartment where Whelan was staying and again attempted to talk with her. Price testified that upon Whelan's refusal, he went to the parking lot and was going to shoot himself. However, upon seeing Whelan and her friends leaving, he opted to try one more time to talk to her. He blocked their car and forced Whelan, by threats to kill or to shoot at gun point, to come with him. Whelan and Price left in Price's car. As they approached a stop sign, Whelan jumped out of the car and ran to the door of a nearby tavern. Just as she reached the door, Price fired one shot which hit the wall near the door. Whelan was hit by some of the flying debris but not seriously injured. Price was soon taken into custody.

At trial, Price raised the defense that he had not intended to kill or hurt Whelan and that he only intended to make a dramatic gesture expressing his distress over the breakup. He presented evidence that he was a good marksman and could have hit Whelan had he so intended.

The case was tried to the court and Price appeals his conviction for attempting to commit murder alleging that the evidence failed to show the requisite intent.

Our scope of review was set forth in *City of Des Moines v. Huff*, 232 N.W.2d 574 (Iowa 1975).

> In a criminal case tried to the court, as in a civil case tried to the court at law, the court's verdict is like a jury verdict. Upon review of the sufficiency of evidence to support the verdict, the evidence is viewed in its light most favorable to the verdict, and we accept as established all reasonable inferences tending to support it. See, e.g., *State v. Volk*, 220 N.W.2d 607, (Iowa 1974). In review of any case tried to the court at law, findings of the trial court are to be broadly and liberally construed, rather than narrowly or technically, and in case of ambiguity, they will be construed to uphold, rather than defeat, the judgment. Of course, this does not preclude inquiry into whether the trial court applied erroneous rules of law which materially affected its decision. We are not bound by trial court determinations of law. *Farmers Insurance Group v. Merryweather*, 214 N.W.2d 184, 186–187 (Iowa 1974); *Frantz v. Knights of Columbus*, 205 N.W.2d 705, 708 (Iowa 1973).

*Huff*, 232 N.W.2d at 576.

When a constitutional issue is raised, our review is de novo. *State v. Iverson*, 272 N.W.2d 1, 4 (Iowa 1978).

The defendant first contends the trial court erred by including the following language in its conclusions of law:

The intent with which an act is done is seldom, if ever, capable of direct positive proof but is to be arrived at by such reasonable inferences from the acts and facts proved as would ordinarily be drawn therefrom by a candid and cautious person in the exercise of a guarded judgment. Everyman is presumed to intend that which is a natural and necessary result of his own act.

The defendant claims this language unconstitutionally creates a conclusive presumption of intent to kill. The State argues that the language creates only a permissive inference and is therefore constitutional.

In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) the U.S. Supreme Court found an instruction stating "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" to be unconstitutional. The Court stated:

Because David Sandstrom's jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption ... or a conclusive presumption ... and because either interpretation would have deprived defendant of his right to the due process of law, we hold the instruction given in this case unconstitutional.

*Id.* at 524, 99 S.Ct. 2459, 61 L.Ed.2d at 51. The question of whether the giving of such a jury instruction can never be considered harmless error was considered in *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). The plurality found that an instruction raising a conclusive presumption on intent was tantamount to a directed verdict on intent, thereby depriving the jury of its proper factfinding function. *Id.* at 84, 103 S.Ct. at 976, 74 L.Ed.2d at 832. *See also Redding v. Benson*, 739 F.2d 1360, 1364–65 (8th Cir.1984) (post *Johnson* court of appeals decision rejecting the argument that giving a *Sandstrom* instruction can never constitute harmless error). The analysis in both *Sandstrom* and

*Johnson* centers on the effect which a *Sandstrom* instruction will have on the juryman.

First, a reasonable jury could well have interpreted the presumption as "conclusive," that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless the defendant proved the contrary by some quantum of proof which may well have been considerably greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of intent.

*Sandstrom*, 442 U.S. at 510, 99 S.Ct. at 2456, 61 L.Ed.2d at 46–47. The court emphasized that the error arises when a reasonable jury member could have given the instruction conclusive or persuasion-shifting effect. *Id.* at 519, 99 S.Ct. at 2456–57, 61 L.Ed.2d at 48.

The Iowa Supreme Court considered the argument that a mandatory presumption is raised when a *Sandstrom* instruction is given in *State v. Rinehart*, 283 N.W.2d 319 (Iowa 1979). The court rejected this argument, stating that many factors control the determination of whether the instruction raised a permissive or mandatory inference including: the other instructions given and the language of the *Sandstrom* instruction itself, (in this case the use of "infer" rather than "presume" supported the finding of a permissive instruction). *Id.* at 322–23.

■ In the case at bar, the whole of the trial judge's opinion indicates that this statement was considered a permissive presumption rather than mandatory. The court set forth a number of facts to support its finding of intent: that defendant had stated "to a close friend that if he could not have Susan Whelan no one else could"; that the defendant forced Whelan into his car "by threats to kill or to shoot at gun point." The court rejected Price's ar-

gument that he merely intended to frighten the defendant, stating that "the defendant fled from the scene immediately upon firing the shot without waiting to see what the effect was or whether he had frightened Susan Whelan sufficiently to cause her to return to his vehicle." He also made the statement "to his step-sister shortly after the incident but before he had any opportunity to know whether he had struck his target or not, 'I shot my ex-girl friend.' " The findings of fact indicate that the trial judge engaged in a permissive rather than mandatory presumption in making this statement.

Secondly, the defendant challenges another statement in the trial court's conclusions of law:

> One does not point a gun at another human being without intent to kill if necessary. A gun has no other function; it cannot have a lesser threat like a whip or a club does.

The defendant contends this language unconstitutionally creates a presumption of intent to kill from use of a firearm. Once again, the State argues that the challenged language creates only an inference and is therefore constitutional.

■ It is true that the jury may not be instructed to presume an intent to kill from the use of a firearm. *State v. Lass*, 228 N.W.2d 758, 766 (1975). However, the inference of deliberation, premeditation, and intent to kill, may be inferred from the use of a weapon. *Id.* While we do not agree with the trial court's statement about pointing a gun, the findings of fact indicate that it did not engage in a mandatory presumption of an intent to kill from the use of a firearm. In its opinion, the court set forth a number of fact findings to support its conclusion that the defendant intended to kill Whelan. These fact findings, which are set out above, negate the argument that the court operated under a mandatory presumption that the use of a firearm indicates an intent to kill.

Finally, the defendant contends the trial court denied him due process by listening to a tape-recorded exhibit during a recess when neither the defendant nor his counsel was present. The tape was made when a police dispatcher telephoned the defendant to tell him that his house was surrounded and that he should go outside and surrender; the tape did not include any admissions of guilt by the defendant.

■ We find that any error involving the tape constituted harmless error. The police dispatcher who made the tape was available for cross-examination. Additionally, the contents of the tape were not incriminating and were cumulative.

The findings of the trial court are affirmed.

AFFIRMED.